[No. 48892–4.   En Banc.   December 22, 1983.]

THE DEPARTMENT OF ECOLOGY, *Respondent,* v. JAMES
J. ACQUAVELLA, ET AL, *Defendants,* SUNNYSIDE
VALLEY IRRIGATION DISTRICT,
*Petitioner.*

*Flower & Andreotti, Charles C. Flower,* and *Patrick Andreotti,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Charles B. Roe, Jr., Senior Assistant,* for respondent.

PEARSON, J.—This case involves a procedural due process issue that arises at an interlocutory phase of a complex statutory water rights adjudication of the surface waters in the Yakima River Basin. The issue is whether due process requires personal service of process on all individual water users who get their water under contract from water distributing entities, or whether service on those entities is sufficient. The trial court held that due process requirements were satisfied by service on the entities. We affirm.

This action was filed by the State of Washington Department of Ecology (DOE), seeking a general adjudication of the rights to surface water in the Yakima River Basin, pursuant to RCW 90.03. Commenced in October 1977, the litigation is still in its preliminary stages.

A general adjudication, pursuant to RCW 90.03, is a process whereby all those claiming the right to use waters of a river or stream are joined in a single action to determine water rights and priorities between claimants. The present adjudication involves literally thousands of parties, although only a few are actively involved in this appeal. The vast area covered by the basin accounts for the large number of parties involved in the proceeding. The trial court took judicial notice of the dimensions of the basin:

> [T]he Yakima River commences at the crest of the Cascade Range near Snoqualmie Pass and flows generally southeasterly 175 miles, where it empties into the

Columbia River. Major tributaries to the Yakima River
are the Kachess River; the Cle Elum River; the Tean-
away River; Ahtanum Creek; Toppenish Creek; Satus
Creek; and the Naches River, which itself has two tribu-
taries—the Bumping River and the Tieton River.

The basin encompasses 6,062 square miles. *C.R. Lentz
Review, Yakima Project Water Rights & Related Data* 230
(U.S. Dep't of Interior, Preliminary Record, reprint 1974 &
1977) (hereafter *Lentz*). This area includes a large part of
the Yakima Indian Reservation. Within this area there are
six large reservoirs with a total storage capacity of 1,070,700
acre-feet of water. *Lentz,* at 49. There are also six hydro-
electric plants, two operated by the United States Bureau
of Reclamation; two operated by the United States Bureau
of Indian Affairs; and two operated by Pacific Power and
Light Company. *Lentz,* at 202.

The Bureau of Reclamation began building a large irri-
gation project in the Yakima River Basin in 1905. The
Yakima Project, as it is known, has 1,946 miles of canals.
The Bureau of Indian Affairs constructed the Wapato
Project, which has 786 miles of canals, and receives its
water under a contract with the Bureau of Reclamation. As
of 1973, approximately 475,000 acres were under irrigation
in the Yakima River Basin.

Once a party initiates a general adjudication pursuant to
RCW 90.03, RCW 90.03.120 requires service of summons
upon all those claiming the right to divert the water
involved. In compliance with this section, the DOE made
service of summons in this action upon more than 4,000
defendants. Persons and entities named as defendants by
the DOE were derived from two sources. The first source
was those persons, entities or their successors who had filed
claims with the DOE pursuant to the water rights claims
registration act of 1967. RCW 90.14. The second source was
those who had been issued permits or certificates by the
DOE (or its predecessor agency) under the 1917 water code.
RCW 90.03. All of these persons were personally served in
compliance with RCW 90.03.130. Among those served was

the United States. Pursuant to the McCarran Amendment, 43 U.S.C. § 666 (1976), the United States will waive sovereign immunity and allow its water rights to be determined in state court proceedings only if there is a general adjudication in which all those with water rights are parties or otherwise bound by the adjudication.

RCW 90.03.120 contains the following provision pertaining to who should be served with summons in this type of proceeding:

That any persons claiming the right to the use of water by virtue of a contract with claimant to the right to divert the same, shall not be necessary parties to the proceeding.

The trial court issued an order clarifying this provision on June 5, 1981, which provided in part:

1. That all irrigation districts, water distribution districts, canal companies, ditch companies, cities, towns and other governmental entities organized pursuant to the statutes of the United States or the State of Washington may file claims herein on behalf of all water users within their respective boundaries to whom they supply water or whose lands are assessed by such entity, and such filing, if timely and proper, will be deemed by the court to be a filing of a claim by all such water users within the boundaries of such entities for the water obtained from such entities. After the filing of the claim by such entities, such individual water users who obtain their water solely from such entities or whose lands are assessed by such entity need not file individual claims herein but may do so if they so desire.

2. Any water user, whether within or without the boundaries of the above described entities and whether or not partially covered by the claim of such entity for water obtained from such entity, who directly diverts any surface water (including, but not limited to, springs, ponds, lakes, streams, creeks or rivers) must file a claim for the water so diverted on or before September 1, 1981 or they may lose such water right.

On June 16, 1981, the Department of Ecology mailed copies of this order to the 4,289 persons or entities who had been previously served in this proceeding.

In response to the summons, over 2,100 claims were filed with the Yakima County Superior Court by September 1, 1981. The trial court determined that all of the water diverting or delivering entities in the basin were served with process. Pursuant to a request of the trial court, over 50 of these water distribution entities filed affidavits describing their operations and their water delivery records. Some of these entities deliver water to other entities who further distribute the water. Those secondary distributors have the names and addresses of the users to whom they deliver water. As an example of this, the trial court noted the City of Yakima, which receives water from a number of irrigation districts and canal companies. The City of Yakima is usually listed as one distributee in the records of those entities. The City distributes domestic water to approximately 17,000 homes and businesses, and distributes irrigation water to approximately 11,000 parcels of land. Moreover, the City of Ellensburg, also in the Yakima River Basin and with a population in excess of 12,000, essentially receives and distributes its water in the same manner. Each of the 12 or 13 cities within the Yakima River Basin maintains records of the names and addresses of those to whom they distribute water. The trial court estimated that in excess of 40,000 additional persons would have to be served if all those receiving water under contract with water distribution entities are necessary parties to this adjudication.

█ Petitioner Sunnyside Valley Irrigation District contends that the trial court cannot enter a valid judgment of general adjudication unless the DOE serves summons upon all persons having water rights in the Yakima River Basin. It is clear under Washington law that persons receiving water under contract with water distribution entities are owners of water rights. It has long been settled in this state that property owners have a vested interest in their water rights to the extent that the water is beneficially used on the land. *Lawrence v. Southard,* 192 Wash. 287, 73 P.2d 722, 115 A.L.R. 1308 (1937); *Longmire v. Smith,* 26 Wash.

439, 67 P. 246 (1901). In *Nielson v. Sponer,* 46 Wash. 14, 89 P. 155 (1907), this court noted that water rights must receive due process protection.

Since it is clear under Washington law that all of the water users in the Yakima River Basin have vested property interests in their water rights, and their property interests may be adversely affected by this proceeding, we must determine whether the requirements of due process have been met in this case.

The fourteenth amendment to the United States Constitution and article 1, section 3 of the Washington State Constitution provide that no person shall be deprived of life, liberty, or property without due process of law. The landmark case with regard to the requirements for notice under the due process clause is *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950). In *Mullane,* the Supreme Court recognized that, prior to an action which will affect an interest in life, liberty, or property protected by the due process clause, notice must be provided which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314. *Mullane* involved a New York statute which provided that the beneficiaries of a number of small trusts administered in a common trust could be notified by newspaper publication of an accounting by the trustee. Since the trustee had the names and addresses of the beneficiaries, the Court found this provision constitutionally inadequate "because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand." 339 U.S. at 319.

In a recent case, the Supreme Court held that when the name and address of a party is reasonably ascertainable,

[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to

a proceeding which will adversely affect the liberty or property interests of *any* party . . .

*Mennonite Bd. of Missions v. Adams,* ___ U.S.___, 77 L. Ed. 2d 180, 103 S. Ct. 2706, 2712 (1983). The *Mennonite Bd. of Missions* case involved the sale of real property due to the nonpayment of property taxes. The Court held that a mortgagee must receive notice by mail or personal service since it had a legally protected property interest, and its name could easily have been discovered in the public records.

■■ If a moderate number of water users was involved in the present case, we might find notice by mail or personal service was required. However, as the trial court noted, there are in excess of 40,000 persons or entities who receive water from the subject river basin. As the Supreme Court stated in *Mullane,* "[a] construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified." 339 U.S. at 313–14. To require the DOE to compile the names and addresses of all ultimate water users in the basin would be an impractical obstacle.

The trial court found that DOE "meticulously and properly followed" the service of summons provisions of the water code provided in RCW 90.03.130. In addition to personally serving over 4,000 water users who had claims of record, publication of the summons was made in newspapers of general circulation in the area. The DOE also held eight public meetings, attended by over 1,000 persons, to provide information about the proceeding.

An additional and important factor to consider in our determination of whether constitutional due process considerations have been satisfied is the representation of the water users by the water distributing entities. There is an identity of interest between the entities and water users such that the entities are fully empowered to represent their water users in the present type of litigation. In one of our earliest decisions, this court noted the representative

capacity of these water distributing entities was akin to a trustee–beneficiary relationship.

> Before this action was brought, the individuals who were the proprietors of the land incorporated themselves formally, and . . . transferred the right to control the water for their individual use to the corporation. This certainly would make the corporation a trustee of an express trust, and the transfer of the control and the ditch in actual possession of that corporation would be sufficient to create a title by which the corporation could sue as trustees of an express trust.

*Thorpe v. Tenem Ditch Co.,* 1 Wash. 566, 571–72, 20 P. 588 (1889). This relationship between distributing entities and water users has been recognized and upheld throughout the years in the western United States. *See Smith v. Enterprise Irrig. Dist.,* 160 Or. 372, 85 P.2d 1021 (1939); *Arroyo Ditch & Water Co. v. Baldwin,* 155 Cal. 280, 100 P. 874 (1909); *Combs v. Farmers' High Line Canal & Reservoir Co.,* 38 Colo. 420, 88 P. 396 (1906).

In *Combs v. Farmers' High Line Canal & Reservoir Co., supra,* the plaintiffs were landowners seeking to establish some appropriative water rights. There had previously been an adjudication between the Rocky Mountain Water Company, from whom they received their water, and the defendants. In holding that the individual plaintiffs were *precluded* from maintaining the action, the Colorado Supreme Court observed:

> [T]he owner of the ditch is in this proceeding regarded as the representative of consumers thereunder, and, while the rights of the consumers to the use of water are distinct and independent of the rights of the carrier which transports the water for hire, yet the rights of the two combined constitute a completed appropriation . . .
> . . . [The plaintiffs] are bound by the provisions of the former decree as to the quantity of water they may have diverted for their benefit by their carrier, whoever such carrier may be.
> We say that these plaintiffs had due notice of, and, through their representative or trustee, participated in, the former proceedings that ripened into a decree. . . .

This court, upon several occasions, has held that a ditch company, by means of which water consumers enjoy their appropriation, is the trustee and representative of the consumers for the protection of the rights of the latter.

38 Colo. at 431–32. These cases recognize that the only practical manner of dealing with such a large number of individual water rights holders is through an entity which can speak for all of those persons in a representative capacity. Undoubtedly this was in the mind of the Legislature when RCW 90.03.120 was enacted, to provide that water rights holders who receive water under contract from distributing entities are not necessary parties to a water rights adjudication. Were it otherwise, and all water users were necessary parties, there would be a tremendously unwieldy duplication of claims. As the trial court noted:

The original diverters would certainly have to file a claim; then the canal companies would feel obliged to file a claim and to protect their water rights, the individual landowner would have to file a claim, all of which would cover the same land and water right.

We hold that under the special circumstances of this case the notice provided by the DOE was adequate to meet constitutional due process requirements.

Our conclusion that the constitutional requirements of due process have been met in this case is limited to the extremely large and complex nature of the present statutory water rights adjudication. In an adjudication of a smaller scale, due process might require service of process upon all individual water users who receive their water from distributing entities. In addition, at some point in this lengthy adjudication the trial court may find it necessary to require service of process, or some other remedy, to protect the interests of water users not adequately represented by their distributing entities. Our decision should not be construed to prohibit any future remedial measures the trial court finds necessary in this case.

The decision of the trial court is affirmed.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, DORE, and DIMMICK, JJ., and CUNNINGHAM, J. Pro Tem., concur.