[No. 58872-4.　En Banc.　September 17, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. KERMIT A. BELGARDE, *Petitioner*.

712

*Robert H. Gombiner* and *Nance, Iaria & Gombiner,* for petitioner.

*Michael E. Rickert, Prosecuting Attorney,* and *K. Garl Long, Senior Deputy,* for respondent.

UTTER, J. — In a third trial, a jury found petitioner Kermit Belgarde guilty of first degree murder and attempted first degree murder. He now seeks a new trial. Two issues are presented: whether Belgarde timely filed his affidavit of prejudice and whether the trial judge had authority to preside over Belgarde's retrial after his retirement. Review of RCW 4.12.050 and article 4, section 7 of the Washington State Constitution indicates Belgarde's affidavit was not timely filed and the retired trial judge had authority to preside over the retrial. We affirm the convictions.

I

Petitioner was initially convicted of first degree murder and attempted first degree murder in 1984 following a trial presided over by Judge Walter Deierlein in the Superior Court for Skagit County. In May of 1988, this court reversed petitioner's convictions. We remanded for a new trial because the prosecutor made repeated improper and prejudicial statements in his closing argument. *State v. Belgarde,* 110 Wn.2d 504, 506-12, 755 P.2d 174 (1988).

On July 8, 1988, the parties appeared in the Superior Court for Skagit County before Judge Deierlein to set a trial date. Petitioner filed an affidavit of prejudice against Judge Deierlein, asking him to recuse himself from the retrial, which motion was denied. Judge Deierlein reasoned the

motion was not timely filed since he made many discretionary rulings in the course of petitioner's first trial. A trial date was not set at this time.

On July 27, 1988, petitioner appeared before Judge Deierlein with new counsel. Counsel requested a trial date in February or March of 1989.[1] Judge Deierlein noted his hesitancy to begin the trial in February or March because his term expired in January. After speaking with Commissioner Mullen, who was running for Judge Deierlein's position, the judge noted he could "set an order following the election that the trial actually start February 6th before Judge — whomever is elected . . .." Report of Proceedings, at 79 (July 27, 1988). The judge noted that trial could be set in November or December if the defense wished. The defense said it preferred the later trial date. The court then scheduled trial to begin on February 6, 1989.

Jury selection began on February 6, 1989, with Judge Deierlein presiding. On the second day of voir dire, one prospective juror remarked in the presence of the others that Belgarde had "been proved guilty once." Judge Deierlein granted the defense's motion for a mistrial. Jury selection began again on March 6, 1989, again with Judge Deierlein presiding. The jury found him guilty of first degree murder and attempted first degree murder and he was sentenced to life imprisonment.

Petitioner appealed, and the Court of Appeals affirmed his convictions. *State v. Belgarde*, 62 Wn. App. 684, 815 P.2d 812 (1991). He then sought review of the Court of Appeals' decision in this court. His petition for review raised four issues. This court granted review on only two of the four issues: whether petitioner's affidavit of prejudice was timely filed; and whether Judge Deierlein had jurisdiction to preside over the retrial after he had retired. See Order Granting Discretionary Review (Mar. 3, 1992).

---

[1] At a pretrial motion before Judge Deierlein on July 15, 1988, Belgarde waived his speedy trial guaranty.

## II

Belgarde contends he timely filed his affidavit of prejudice against Judge Deierlein. The issue he raises is one of first impression: when a judgment of a trial court is reversed on appeal and remanded for a new trial, is a party to the original trial entitled to disqualify the judge that presided over the first trial without cause? Based on the discussion that follows, we hold such a party may not disqualify the original trial judge from presiding over the retrial without cause.

RCW 4.12.040 provides in part that no judge "shall sit to hear or try any action or proceeding when it shall be established as hereinafter provided that said judge is prejudiced against any party or attorney . . .". RCW 4.12.040(1). Under RCW 4.12.050, any party or attorney may establish the requisite prejudice by filing a motion and an affidavit alleging the judge is prejudiced against him. *See* RCW 4.12.050.[2] This statutory timeliness requirement bars a change of judge without cause when, prior to a party's motion for a change of judge, the judge selected to preside over trial (1) has made a discretionary ruling after the party moving for disqualification has become a party to the action and (2) the ruling is one of which the party moving for a change of judge has been given adequate notice. RCW 4.12.050; *Marine Power & Equip. Co. v. Department of Transp.*, 102 Wn.2d 457, 460-61, 687 P.2d 202 (1984). If a party complies with the statutory provisions, prejudice is deemed established, and the judge no longer has authority to proceed further into the merits of the case. *Marine Power*, at 460; *State v. Cockrell*, 102 Wn.2d 561, 566, 689 P.2d 32 (1984); *State v. Dixon*, 74 Wn.2d 700, 702, 446 P.2d 329 (1968).

Belgarde argues retrial following reversal on appeal is a different "case" than the case in which the original trial was

---

[2]To establish this prejudice RCW 4.12.050 requires . . . "That such motion and affidavit [be] filed and called to the attention of the judge before he [*sic*] shall have made any ruling whatsoever in the case . . .[,] the hearing of which the party making the affidavit has been given notice, and before the judge presiding has made any order or ruling involving discretion . . .." RCW 4.12.050.

held, thus entitling him to exercise his right to one change of judge per action under RCW 4.12.050. *See, e.g., State ex rel. Mauerman v. Superior Court*, 44 Wn.2d 828, 271 P.2d 435 (1954). There, this court held that a proceeding to modify the custody provisions of a final divorce decree, upon allegations of changed conditions since the entry of the decree, was a new proceeding within the meaning of RCW 4.12.040 and .050 that entitled a party to file an affidavit of prejudice against the judge who presided over the first proceeding. *Mauerman*, at 830. This court reasoned the modification action was a new proceeding because it "present[ed] new issues arising out of new facts occurring since the entry of the decree." *Mauerman*, at 830.

In *State v. Clemons*, 56 Wn. App. 57, 782 P.2d 219 (1989), *review denied*, 114 Wn.2d 1005 (1990), the Court of Appeals interpreted "case" in RCW 4.12.050 to include "pretrial, trial, posttrial and appellate proceedings." *Clemons*, at 59. There, the Court of Appeals held a retrial following a mistrial due to a hung jury was the same "case" for purposes of RCW 4.12.050. The Court of Appeals, however, specifically declined to consider the issue now presented, whether on remand after appeal RCW 4.12.050 allows a party to disqualify the original trial judge without cause. *Clemons*, at 59.

Belgarde's solution for avoiding this sort of prejudice is to read "case" as being interchangeable with "trial". He claims the trial court's resentment of the appellate court's reversal will always engender bias toward the party on retrial following reversal. In order to avoid prejudice against a party in this situation, the party must be allowed to file an affidavit of prejudice against the trial judge to prevent him or her from presiding over the retrial.

■ ■ Although RCW 4.12.050 does not define the word "case", when a statutory term is undefined, dictionaries may be consulted to determine its meaning. *American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991). In its legal sense, "case" is a general term for an action, cause, suit, or proceeding. Black's Law Dictionary 195 (5th

ed. 1979). "Action" is a similar general term and has been defined as the prosecution of a legal right by one party against another. Black's Law Dictionary 26 (5th ed. 1979). In distinction to these general terms, "trial" refers to the judicial examination of a cause of action and is but a phase or portion of the criminal or civil action. *See* Black's Law Dictionary 1348 (5th ed. 1979). The definitions of these terms militate against Belgarde's position that this court read "case" to mean "trial". "Trial" refers to a relatively finite set of proceedings within the more or less unbounded parameters of a "case" or "action". We conclude in RCW 4.12.050 "case" is used synonymously with "action" or "proceeding" and cannot be used interchangeably with "trial".

■■ When this court has had to decide if a proceeding was a new "case" for determining if a party is entitled to a change of judges as a matter of statutory right, it has utilized the analytic framework developed in *State ex rel. Mauerman v. Superior Court, supra.* Under *Mauerman,* a new proceeding or case is one that (1) presents new issues arising out of (2) new facts occurring since the entry of final judgment. Retrial of petitioner following this court's reversal of his convictions is not a new proceeding or case. This court reversed petitioner's convictions because of inflammatory statements made during closing argument. The action was remanded for retrial on the same factual and legal issues.

Existing authority and the meaning of "case" indicate that "case" as used in RCW 4.12.050 means "action" or "prosecution" and thus includes the original trial. Judge Deierlein made many discretionary rulings in the course of presiding over Belgarde's first trial. As such, the timeliness requirement of RCW 4.12.050 barred the disqualification of Judge Deierlein without cause. While we share petitioner's concern that appellate reversal of trial court rulings may engender bias toward a party upon the return of the action to the trial court, we are not, however, prepared to assume as a matter of law that such bias is always present when a case returns

to the trial court after an appellate court reverses a trial court decision.

## III

Belgarde contends that his convictions are void because Judge Deierlein was not properly appointed as judge pro tempore when he presided over Belgarde's retrial. We find that Judge Deierlein was authorized to preside over Belgarde's second and third trials, but rest our decision on different grounds than the Court of Appeals.

The term of all superior court judges is 4 years and expires on the second Monday in January. Const. art. 4, § 5. Judge Deierlein's term expired on January 9, 1989. Belgarde's second trial, which ended in a mistrial, began on February 6, 1989. Belgarde's third trial, which resulted in conviction, began on March 6, 1989. Judge Deierlein was a retired judge when he presided over both of Belgarde's retrials. The record does not reveal when it was decided Judge Deierlein, rather than the newly elected Skagit County judge, would preside over the trial.

A case in superior court may be tried by a judge pro tempore. Const. art. 4, § 7 (amend. 80); RCW 2.08.180. The appointment of a judge pro tempore must be "agreed upon in writing by the parties litigant, or their attorneys of record . . . ." Const. art. 4, § 7; RCW 2.08.180; *National Bank of Wash. v. McCrillis*, 15 Wn.2d 345, 356, 130 P.2d 901, 144 A.L.R. 1197 (1942). Alternatively, a party who consents to the appointment of a judge pro tempore orally in open court cannot later claim the absence of a written consent invalidates the appointment. *State ex rel. Cougill v. Sachs*, 3 Wash. 691, 694, 29 P. 446 (1892). The requirement that the parties consent to a judge pro tempore is jurisdictional. *National Bank of Wash. v. McCrillis, supra* at 360.

Belgarde correctly notes that the record in this case does not contain a writing executed by the parties appointing Judge Deierlein as judge pro tempore, and there is also no evidence of an express affirmative oral consent made by Belgarde or his attorney in open court agreeing to have Judge

Deierlein preside over the retrial. Belgarde thus contends that, under *McCrillis,* Judge Deierlein had no authority to preside over Belgarde's retrial.

The Court of Appeals rejected this argument and found instead that petitioner had impliedly consented to have Judge Deierlein preside as a judge pro tempore. *State v. Belgarde,* 62 Wn. App. 684, 693, 815 P.2d 812 (1991). The Court of Appeals noted that the trial judge had specifically informed both petitioner and his attorney that he would be retiring before the start of the retrial.

We cannot agree. There is no authority which states that the written consent of a party or the party's attorney that article 4, section 7 of the Washington State Constitution requires can be satisfied by acquiescent conduct alone. Prior decisions only hold that when there is no written consent appointing a judge pro tempore, oral consent to such appointment given in open court is sufficient to satisfy the consent requirement of article 4, section 7 of our state constitution. *See State ex rel. Cougill v. Sachs, supra.* When there is no writing appointing a superior court judge pro tempore, only the express and affirmative oral consent of a party or the party's attorney is sufficient to satisfy the consent requirement of article 4, section 7 of our state constitution. *See McCrillis,* at 358-60 (written consent to have judge pro tempore preside over trial); *State ex rel. Cougill v. Sachs, supra* (oral consent in open court to have judge pro tempore preside over trial); *see also Bellevue v. Acrey,* 103 Wn.2d 203, 691 P.2d 957 (1984) (right to a jury trial); *State v. Wicke,* 91 Wn.2d 638, 591 P.2d 452 (1979) (right to a jury trial).

Under this approach, there must be an affirmative and knowing oral consent by a party or his attorney to have a judge pro tempore preside over the trial when the parties fail to execute a writing appointing a judge pro tempore. *See, e.g., Bellevue v. Acrey, supra* at 207; *State v. McNairy,* 20 Wn. App. 438, 440, 580 P.2d 650 (1978). At a minimum, this requires a showing of an affirmative verbal act made in

open court. The record does not reveal that such an affirmative verbal act ever occurred.

The State argues that, due to the adoption of a constitutional amendment, the lack of petitioner's affirmative and knowing oral consent to have a judge pro tempore preside over his retrial did not result in a violation of article 4, section 7 of the Washington State Constitution. In 1987, the voters adopted amendment 80 to the Washington Constitution, adding the following sentence to Const. art. 4, § 7:

> However, if a previously elected judge of the superior court retires leaving a pending case in which the judge has made discretionary rulings, the judge is entitled to hear the pending case as a judge pro tempore without any written agreement.

Senate Joint Resolution 8207, 50th Legislature; Laws of 1987, 1st Ex. Sess., p. 2815.[3]

Belgarde argues in response that the provisions of Const. art. 4, § 7 (amend. 80) do not apply to him. He submits that Const. art. 4, § 7 (amend. 80) cannot be applied to a case which was pending when amendment 80 was adopted because the amendment is in derogation of his constitutional right to be tried by an elected superior court judge.

Belgarde essentially argues that article 4, section 7 of the Washington State Constitution expresses constitutionally required procedures which protect the article 4, section 5 right to be tried by an elected superior court judge. While article 4, section 7 does express constitutionally required procedures that may, in fact, function in this manner, article 4, section 5 does not function as petitioner argues. Article 4, section 5 of our state constitution requires that at least one superior court judge in each county shall be elected:

> There shall be in each of the organized counties of this state a superior court for which at least one judge shall be elected by the qualified electors of the county at the general state election . . ..

---

[3]The same Legislature amended RCW 2.08.180 to incorporate the language of amendment 80. Amended RCW 2.08.180 took effect on January 1, 1988. *See* Laws of 1987, ch. 73, § 1.

Const. art. 4, § 5. This provision necessarily envisions that unelected superior court judges will perform judicial duties and exercise judicial powers. Moreover, Const. art. 4, § 5 does not expressly grant a right to a trial presided over by an elected superior court judge, the premise upon which Belgarde's argument turns.

Although the Washington Constitution, article 4, section 5, does not provide textual support for Belgarde's position, he contends decisions of this court recognize a constitutional right to a trial presided over by an elected superior court judge. We disagree. Contrary to Belgarde's suggestion, this court in *State v. Hastings*, 115 Wn.2d 42, 793 P.2d 956 (1990) did not decide that the right to be tried by an elected superior court judge is a substantive right. Rather, the court addressed the issue whether consent was a jurisdictional requirement for appointing a district court judge pro tempore. *Hastings*, at 44-46.

Belgarde also misreads the decision in *State v. Sain*, 34 Wn. App. 553, 557, 663 P.2d 493 (1983). In *Sain*, the Court of Appeals addressed the narrow question whether an attorney could consent to his client's being tried by a judge pro tempore in the face of the client's express refusal in open court to the appointment of a judge pro tempore to preside over the trial. To the extent that petitioner reads *Sain* as prohibiting attorneys from appointing a judge pro tempore, this reading conflicts with the express language of Const. art. 4, § 7 (amend. 80)[4] and must therefore fail. *Sain* simply requires that an attorney must in fact be authorized by his or her client to consent to a trial presided over ,by a judge pro tempore.

We also disagree with the Court of Appeals' conclusion that article 4, section 7 (amendment 80) operates retroactively when applied to this case. Rules used to determine

---

[4]"A case in the superior court may be tried by a judge, pro tempore, . . . agreed upon in writing by the parties litigant, *or their attorneys of record . . ..*" (Italics ours.) Const. art. 4, § 7.

when a statute operates retroactively can also be used to determine if a constitutional amendment operates retroactively. 16 C.J.S. *Constitutional Law* § 36 (1984). This court has stated

> A statute is not retroactive merely because it relates to prior facts or transactions where it does not change their legal effect. It is not retroactive because some of the requisites for its actions are drawn from a time antecedent to its passage . . ..

*State v. Scheffel*, 82 Wn.2d 872, 879, 514 P.2d 1052 (1973), *appeal dismissed*, 416 U.S. 964 (1974). The key to determining if Const. art. 4, § 7 (amend. 80) operates retroactively is whether the event triggering its application occurred before or after the amendment took effect:

> A statute operates prospectively when the precipitating event for [its] application . . . occurs after the effective date of the statute, even though the precipitating event had its origin in a situation existing prior to the enactment of the statute.

*Aetna Life Ins. Co. v. Washington Life & Disab. Ins. Guar. Ass'n*, 83 Wn.2d 523, 535, 520 P.2d 162 (1974). The event triggering the application of Const. art. 4, § 7 (amend. 80) is the retirement of an elected judge who has pending cases, not the fact that a case is pending. The fact that petitioner's case was pending when Const. art. 4, § 7 (amend. 80) became effective is thus an antecedent fact, not the event triggering the application of Const. art. 4, § 7 (amend. 80). Accordingly, Const. art. 4, § 7 (amend. 80) could be retroactively applied here if Judge Deierlein had retired before the amending language took effect.

■ Amendment 80 took effect on December 2, 1987, when, pursuant to RCW 29.62.130, the Secretary of State certified the results of the 1987 general election and the Governor proclaimed the passage of amendment 80. RCW 29.62.130; *see State ex rel. Washington State Sportsmen's Coun., Inc. v. Coe*, 49 Wn.2d 849, 307 P.2d 279 (1957) (applying RCW 29.62.130). Judge Deierlein, however, retired on January 9, 1989. Thus, applying Const. art. 4, § 7 (amend. 80) here is not retroactive because Judge Deierlein retired after the effective date of the amendment. This is

not a situation where, before the passage of amendment 80 was proclaimed, the trial judge retired and continued to preside without both parties' consent.

Having responded to the reasons that Belgarde has advanced for not applying Const. art. 4, § 7 (amend. 80) to this case and found them unpersuasive, it is proper to consider the effect of this provision on the present case. The language of amendment 80 indicates that once a judge has been elected to the superior court, upon his or her retirement, no written agreement is required for the judge to hear pending cases in which he or she has made discretionary rulings. Thus, amendment 80 did not eliminate the rule that written or oral consent in open court is necessary to appoint a judge pro tempore, *see National Bank of Wash. v. McCrillis*, 15 Wn.2d 345, 360, 130 P.2d 901, 144 A.L.R. 1197 (1942); *State ex rel. Cougill v. Sachs*, 3 Wash. 691, 29 P. 446 (1892). Rather, amendment 80 created a new means for appointing a judge pro tempore in a very limited set of circumstances.

■ This conclusion is reinforced by the legislative history and materials in the official voters' pamphlet.[5] The official ballot title for amendment 80 stated:

> Shall the constitution empower superior court judges, after retirement, to complete pending cases in which they had made discretionary rulings?

1987 Voters' Pamphlet, at 8. The ballot title plainly indicates that the purpose of the amendment was only to permit elected judges to complete their pending cases after they retired without any agreement by the parties that the retired judge be appointed a judge pro tempore. *See* 1987 Voters' Pamphlet, at 9.[6]

---

[5] In interpreting a constitutional amendment, this court examines the legislative history and materials in the official voters' pamphlet. *Tacoma v. Taxpayers of Tacoma*, 108 Wn.2d 679, 687, 743 P.2d 793 (1987).

[6] That this was the purpose of Const. art. 4, § 7 (amend. 80) is further confirmed by the committee hearings held on SJR 8207. The tape recording of the hearing reveals that the primary impetus for the amendment was the *Department of Ecology v. Acquavella*, 100 Wn.2d 651, 674 P.2d 160 (1983) water

■ A constitutional provision should be construed to give effect to the manifest purpose for which it was adopted. *Citizens for Financially Responsible Gov't v. Spokane*, 99 Wn.2d 339, 346, 662 P.2d 845 (1983). Because Judge Deierlein was an elected judge who retired after having made discretionary rulings in Belgarde's pending case, we conclude he was authorized to preside over Belgarde's retrial without the parties' written or oral consent and affirm the Court of Appeals.

DORE, C.J., and BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

---

rights litigation which, by 1987, had been pending in Yakima County Superior Court for several years and was still many years from completion. Judge Stauffacher was willing to complete the *Acquavella* litigation following his retirement, but without a constitutional amendment, under the *McCrillis* case, any of the approximately 2,500 parties could prevent him from doing so by refusing to consent to his appointment as a judge pro tempore. See Senate Judiciary Committee Hearing, remarks on SJR 8207 (Jan. 20, 1987).