## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45673-7-II |
| Respondent, | |
| v. | |
| KEITH IAN DOW, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — A jury found Keith Ian Dow guilty of first degree child molestation. Dow appeals, arguing that (1) the trial court erred by accepting the State's affidavit of prejudice and (2) the trial court erred by admitting an audio recording of a telephone call he made to the victim's mother from jail. Dow also argues in his Statement of Additional Grounds (SAG)[1] that his conviction is barred by double jeopardy.

We hold that the trial court did not err by accepting the State's affidavit of prejudice and Dow's conviction is not barred by double jeopardy. However, we reverse Dow's conviction because the trial court erred by admitting the audio recording in its entirety and remand for further proceedings.[2]

---

[1] RAP 10.10.

[2] Dow also argues that (1) defense counsel was ineffective by failing to object to the audio recording, (2) the trial court abused its discretion by excluding Dr. Yuille's expert testimony, (3) the trial court violated his right to present a defense by excluding Dr. Yuille's testimony, (4) reversal is required because of cumulative error, and (5) the trial court erred by imposing plethysmograph testing as a condition of community custody. He also raises a number of

No. 45673-7-II

FACTS

In 2005, Dow was living with his girlfriend, Cecilia Walde, and her three-year-old daughter, K.W.[3] In September 2005, Walde reported to law enforcement that Dow had molested K.W.

A.  2005 CASE

In 2005, following an investigation, the State charged Dow with first degree child molestation. In 2006, Judge Warning found that K.W. was not competent to testify and dismissed the case without prejudice based on the corpus delicti doctrine.

The State appealed the dismissal, and the Supreme Court ultimately affirmed the trial court's dismissal without prejudice of the State's case.[4]

B.  2010 CASE

In 2010, the State charged Dow with first degree child molestation under a new cause number. The State filed an affidavit of prejudice under RCW 4.12.050 against Judge Warning, requesting a different judge; and a new judge was assigned to the case. Dow moved to vacate the affidavit of prejudice because Judge Warning had issued a discretionary ruling in the 2005 case.

---

additional issues in his SAG. Because we reverse Dow's conviction based on the audio recording, we do not reach these claims.

[3] We use the victim's initials, K.W., to protect her privacy. *See* General Order 2011-1 of Division II, In re The Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases (Wash. Ct. App.), available at: http://www.courts.wa.gov/appellate_trial_courts/

[4] *State v. Dow*, 168 Wn.2d 243, 255, 227 P.3d 1278 (2010).

The trial court denied Dow's motion to vacate, finding that *State v. Torres*[5] was "factually very, very close," and under *Torres*, filing a new information following a dismissal without prejudice was a new case for purposes of RCW 4.12.050.

Dow moved to dismiss based on double jeopardy. The trial court denied Dow's motion, finding that double jeopardy does not apply because Dow's earlier case was dismissed "prior to empanelling of the jury, [and] also the language of the original trial dismissal which indicated on its face that it was without prejudice. Since the Supreme Court affirmed that decision, without comment, it is assumed that their dismissal was also without prejudice." Clerk's Papers at 242-43.

Dow also moved to exclude an audio recording of a phone call made by Dow from jail to Walde, K.W.'s mother.[6] Among other things in the recorded phone call, Walde makes statements about her conversation with Dow's ex-wife, Mary. Dow argued that the recording was irrelevant, prejudicial, and contained hearsay. The State noted that although it could not redact the specific portions of the recording that Dow argued were inadmissible hearsay, it did not intend on asking questions about those specific statements.

The trial court denied Dow's motion to exclude the recording. Specifically regarding Walde's statements involving her conversation with Dow's ex-wife, the trial court found that there

---

[5] 85 Wn. App. 231, 232-33, 932 P.2d 186, *review denied*, 132 Wn.2d 1012 (1997).

[6] *See* page 9 for excerpts of the audio recording.

was not "any prejudice by it being in there." 5A Verbatim Report of Proceedings (VRP) at 895. The trial court also found even if the statements could be redacted, "the blanks in a consistent flow of a conversation in many ways create more speculation than something that seems so minor— appears to be so minor and it doesn't go to any of the issues before the Court." 5A VRP at 895. At trial, the State played the entire audio recording.

During the State's direct examination of Walde, the State played the audio recording in its entirety and distributed a transcript to the jury as a listening aid. The trial court instructed the jury that the transcript may only be considered as a listening aid and not as "evidence to prove the contents of the audio." 5A VRP at 1018. The trial court did not give any limiting instruction regarding Walde's statements.

The jury found Dow guilty of first degree child molestation. Dow appeals.

ANALYSIS

A.   AFFIDAVIT OF PREJUDICE

Dow argues that the trial court erred by accepting the State's affidavit of prejudice. Specifically, Dow argues that his charge was part of the same case as the case that was dismissed in 2006, and therefore, under RCW 4.12.050, the State's affidavit of prejudice was untimely because the judge had already made a discretionary ruling. We disagree because the information filed in 2010 was not the same case that was dismissed without prejudice in 2006.

RCW 4.12.040(1) provides that "[n]o judge of a superior court of the state of Washington shall sit to hear or try any action or proceeding when . . . said judge is prejudiced against any party or attorney, or the interest of any party or attorney appearing in such cause." "[A]ny party may establish prejudice by filing a motion and a supporting affidavit alleging that the judge before

whom an action is pending is prejudiced against that party or the interests of that party." *State v. Hawkins*, 164 Wn. App. 705, 712, 265 P.3d 185 (2011), *review denied*, 173 Wn.2d 1025 (2012); RCW 4.12.050(1). Once a party timely files an affidavit of prejudice, the judge no longer has authority to proceed into the merits of the action. *Hawkins*, 164 Wn. App. at 713. An affidavit of prejudice is timely filed before the judge has made any ruling "'whatsoever in the case, either on the motion of the party making the affidavit, or on the motion of any other party to the action . . . and before the judge presiding has made any order or ruling involving discretion.'" *State v. Torres*, 85 Wn. App. 231, 232-33, 932 P.2d 186, *review denied*, 132 Wn.2d 1012 (1997) (quoting RCW 4.12.050).

Whether the State's affidavit of prejudice was timely depends on "the effect of a dismissal without prejudice. If a dismissal without prejudice terminated the action," then the State's affidavit in the current case was timely. *Torres*, 85 Wn. App. at 233. "If, on the other hand, the filing of the second information was a mere continuation of the original case," the State's affidavit was untimely. *Torres*, 85 Wn. App. at 233.

"A proceeding is a new case if it presents new issues arising from new facts that have occurred since the entry of final judgment." *Hawkins*, 164 Wn. App. at 713. A retrial following reversal on appeal is a continuation of the original action and, therefore, is the same case for purposes of RCW 4.12.050. *Hawkins*, 164 Wn. App. at 713; *see State v. Belgarde*, 119 Wn.2d 711, 716, 837 P.2d 599 (1992) (noting that a "case" includes pretrial, trial, posttrial, and appellate proceedings). However, a case is terminated where the trial court enters an order of dismissal without prejudice. *Torres*, 85 Wn. App. at 233; *see Hawkins*, 164 Wn. App. at 715. The State

starts a new case when it files the second information after a dismissal without prejudice. *Torres*, 85 Wn. App. at 234.

*Torres* controls here. In *Torres*, the State filed an information in a case that was subsequently dismissed without prejudice after the trial court made discretionary rulings. 85 Wn. App. at 234. The State then filed a new information based on the same charge after necessary witnesses became available. *Id.* The defendant filed an affidavit of prejudice and moved for change of judge before the trial court made any discretionary rulings. The trial court denied the motion for a new judge. *Id.* at 232. The court held that after the dismissal without prejudice of the first case involving the same charge, a motion for a change of judge in a refiled case is timely if the motion is made in the refiled case before the trial court has made any discretionary rulings. *Id.* The "filing of the second information started a new case." *Id.* at 234.

Here, the State filed an information in 2005, and the case was dismissed without prejudice in 2006. The State filed a new information in 2010. Filing the new information started a new case. *Torres*, 85 Wn. App. at 234. The State filed an affidavit of prejudice at its first appearance in the new proceeding, before the trial court had issued any discretionary ruling. Pursuant to *Torres*, the State's motion was timely and was properly granted by the trial court under RCW 4.12.050. *See Torres*, 85 Wn. App. at 234 (holding that, in a newly filed case after dismissal without prejudice of a prior case, "[b]ecause the judge against whom the affidavit was filed had not made a discretionary ruling [in the newly filed case], the motion was timely and should have been granted").

Dow argues that because the "action is based on the same facts and issues," it is the same case under *Belgarde*. Br. of Appellant at 11-12. However, as the *Torres* court noted, *Belgarde* presented a different issue. *Torres*, 85 Wn. App. at 234. In *Belgarde*, the issue was "the status of a case following an appeal." *Torres*, 85 Wn. App. at 234 (citing *Belgarde*, 119 Wn.2d at 715). The *Belgarde* court held that "when a judgment of a trial court is reversed on appeal and remanded for a new trial . . . a party may not disqualify the original trial judge from presiding over the retrial without cause." *Belgarde*, 119 Wn.2d at 715. Thus, Dow's argument fails because *Belgarde* is factually and procedurally distinguishable. *See Torres*, 85 Wn. App. at 234 (noting that the State's argument based on *Belgarde* failed because *Belgarde* presented a different issue).

The refiling of charges after a dismissal without prejudice started a new case. The State timely filed an affidavit of prejudice in the new proceeding. Therefore, the trial court did not err by recognizing the affidavit of prejudice.

B.     DOUBLE JEOPARDY[7]

Dow argues in his SAG that reversal is required because his conviction is barred by double jeopardy. Dow contends that double jeopardy applies "to this case even though it was not attached nor terminated." SAG at 5. Because Dow's argument is based on a misunderstanding of double jeopardy, we disagree.

---

[7] Because we reverse Dow's conviction, we do not address Dow's other SAG arguments.

7

A violation of double jeopardy is a question of law we review de novo. *State v. Fuller*, 169 Wn. App. 797, 832, 282 P.3d 126 (2012). The United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." *State v. Glasmann*, 183 Wn.2d 117, 121, 349 P.3d 829 (2015) (quoting U.S. CONST. amend. V.), *petition for cert. filed*, No. 15-36 (U.S. July 8, 2015). Similarly, the Washington State Constitution prohibits persons from being "twice put in jeopardy for the same offense." *Glasmann*, 183 Wn.2d at 121 (citing WASH. CONST. art. I, § 9). This court interprets the federal and state constitution's double jeopardy provisions identically. *Glasmann*, 183 Wn.2d at 121.

Generally, a double jeopardy violation exists "where (1) jeopardy has previously attached, (2) that jeopardy has terminated, and (3) the defendant is in jeopardy a second time for the same offense in fact and law." *State v. Ervin*, 158 Wn.2d 746, 752, 147 P.3d 567 (2006). "Jeopardy does not attach until a defendant is 'put to trial before the trier of the facts, whether the trier be a jury or a judge.'" *State v. George*, 160 Wn.2d 727, 742, 158 P.3d 1169 (2007) (quoting *Serfass v. United States*, 420 U.S. 377, 391, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975)). Thus, jeopardy does not attach merely because the State files charges or pretrial proceedings occur. *George*, 160 Wn.2d at 742. Jeopardy attaches in a jury trial when the jury is impaneled. *George*, 160 Wn.2d at 742.

Here, the issue is whether jeopardy attached in Dow's 2005 case, which was dismissed without prejudice. In 2006, during pretrial hearings and before a jury was empaneled or sworn, the trial court dismissed the charge against Dow without prejudice. On the State's appeal, the Supreme Court affirmed the trial court's dismissal without prejudice. *State v. Dow*, 168 Wn.2d 243, 255, 227 P.3d 1278 (2010). Thus, jeopardy did not attach because the trial court dismissed

8

the case without prejudice before the jury was impaneled. *See George*, 160 Wn.2d at 742. Because jeopardy did not attach, Dow's claim that his conviction is barred by double jeopardy fails.

Dow argues that because he "was put twice in Jeopardy for the same alleged crime and by no fault of his own, was made to suffer the effects of a trial twice." SAG at 5. But Dow's argument is factually inaccurate. The charges filed against Dow in 2005 were dismissed without prejudice during pretrial motions before a jury was empaneled; therefore, jeopardy never attached in the 2005 case. Thus, Dow's double jeopardy argument fails.

Dow also argues that the State can "try the case as many times as they please . . . as long as jeopardy was not attached and terminated" within the statute of limitations. SAG at 6. To the extent Dow is making a policy argument about whether this is an appropriate practice, his argument is not appropriately before this court because it is based on facts not present in this case. Because jeopardy did not attach in the 2005 case, reaching Dow's policy argument would require us to speculate on a scenario that does not exist in the current case, which would result in an advisory opinion. This court does not render advisory opinions. *Wash. Beauty Coll., Inc. v. Huse*, 195 Wash. 160, 164-65, 80 P.2d 403 (1938); *see Kitsap County Prosecuting Attorney's Guild v. Kitsap County*, 156 Wn. App. 110, 122, 231 P.3d 219 (2010) (noting that this court does not give advisory opinions).[8]

---

[8] Dow also claims that if "the trial was not going in the State[']s favor," the State can "ask for dismissal and retry" the case with a more favorable judge; thus, allowing the State to "judge shop[]." SAG at 6; Br. of Appellant at 11 (quoting 1A VRP at 37). However, RCW 4.12.040 provides that either party may file an affidavit of prejudice against a judge one time in a case, as long as the judge did not make any discretionary rulings in the case. This requirement safeguards against the circumstance of a party judge shopping after having received unfavorable rulings from a particular judge.

C.       ADMISSION OF AUDIO RECORDING

Dow next argues that the trial court erred by admitting a recording of a telephone call that he made from jail to Walde, K.W.'s mother. Specifically, Dow argues that the trial court should not have admitted the recording in its entirety because it contained statements made by Walde that constitute vouching, and that were irrelevant and unduly prejudicial.[9] We agree.

1.       Standard of Review

We review the trial court's admission of evidence for an abuse of discretion. *State v. Thomas*, 150 Wn.2d 821, 856, 83 P.3d 970 (2004). A trial court abuses its discretion when its decision is based on untenable grounds or untenable reasons. *State v. Barnett*, 104 Wn. App. 191, 199, 16 P.3d 74 (2001). "Appellate courts cannot substitute their own reasoning for the trial court's reasoning, absent an abuse of discretion." *State v. Lord*, 161 Wn.2d 276, 295, 165 P.3d 1251 (2007). This court will not reverse due to an error in admitting evidence that does not result in prejudice to the defendant. *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). An error requires reversal if, within a reasonable probability, the error materially affected the outcome of the trial. *Bourgeois*, 133 Wn.2d at 403.

2.       Walde's statements—vouching

Dow argues that the trial court erred by admitting the audio recording in its entirety because it included Walde's opinion on K.W.'s credibility. We agree.

---

[9] The State offered the full audio recording of a telephone call made by Dow to Walde from jail, contending that it was unable to redact portions of the audio recording. Dow objected to the admission of the audio recording, but the trial court found that the audio recording as a whole was relevant because Dow and Walde were discussing "the point at issue" in the case. 4 VRP at 795.

It is improper for a witness to give an opinion regarding the veracity of another witness. *State v. Demery*, 144 Wn.2d 753, 764, 30 P.3d 1278 (2001). "'[O]pinion testimony'" is "'[t]estimony based on one's belief or idea rather than on direct knowledge of the facts at issue.'" *Id.* at 760 (second alteration in original) (quoting BLACK'S LAW DICTIONARY 1705 (10th ed. 2014)). Admitting impermissible opinion testimony regarding a defendant's guilt may be reversible error because it violates the defendant's constitutional right to a jury trial, including the independent determination of the facts by the jury. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007); *Demery*, 144 Wn.2d at 759. Such testimony invades the exclusive province of the jury and is unfairly prejudicial to the defendant. *Demery*, 144 Wn.2d at 759. Whether the jury was properly instructed is important in determining whether the opinion testimony prejudiced the defendant. *See Demery*, 144 Wn.2d at 762.

> The audio recording contained, in relevant part, the following exchange:
>
> [Walde]: You know what that little girl told me? You don't want to know what that little girl told me. And you know how smart she is and she did not lie. There is so much she said that cannot be made up.
>
> [Dow]: Okay…listen alright, most of it is true, alright, but it didn't happen like that.
>
> [Walde]: Most of what is true?
>
> . . . .
>
> [Dow]: Listen, will you come talk to me …? If I call you will come see me and set it straight?
>
> [Walde]: The thing is
>
> [Dow]: I can't do it here. I can't.
>
> [Walde]: You know I believe her 100%.

[Dow]: I know, alright.

Suppl. CP, Ex. 1 at 3-4.

Here, Walde explicitly expresses her opinion about K.W.'s credibility. Because Walde improperly vouched for K.W.'s credibility, the trial court abused its discretion by admitting Walde's statements vouching for K.W.'s credibility.

And, there is a reasonable probability that the trial court's error in admitting Walde's statements regarding K.W.'s credibility materially affected the outcome of the trial. K.W.'s statements and her credibility were the central component to the State's case. Walde's opinions went to the core issue and disputed element—K.W.'s statements about her encounter with Dow. Moreover, the error was compounded when the State repeated Walde's comments in closing argument, saying Walde confronted Dow and said, "That little girl didn't lie to me." 5C VRP at 1351. Thus, the State emphasized K.W.'s credibility based on inadmissible testimony vouching for the veracity of another witness. And the trial court did not give an instruction limiting the weight given to Walde's statements. Because the trial court erred by admitting inadmissible testimony regarding the complaining witness's credibility, the State repeated that testimony, and the trial court failed to give any limiting instruction regarding the weight to be given to Walde's statements in the audio recording, the error had a reasonable probability of materially affecting the outcome of the trial.

3.      Walde's statements referencing Dow's ex-wife

Dow argues that the trial court erred by admitting the audio recording in its entirety because it contained statements made by Walde about her conversation with Dow's ex-wife that are not relevant and are prejudicial. We agree.

The audio recording contained, in relevant part, the following exchange:

[Walde]: Dude, you know I talked to Mary[10] about this?

[Dow]: Uhhh, what did she say?

[Walde]: Well, she told me that before you went to the war that she had taken [D.][11] in twice to the Emergency room for something pretty close.

[Dow]: CeCe it is, that is absolutely ridiculous.

[Walde]: Well

[Dow]: Come on now.

[Walde]: She's got it on record, and I'm like what the hell? And them um, I didn't know that almost every girl you've dated since Mary has had a little girl.

[Dow]: Okay, wait a second.

[Walde]: Yeah, that's weird.

[Dow]: Wait a second. Stop right there. Stop, okay, listen, alright.

[Walde]: This is an expensive phone call.

[Dow]: It's not true. That is not true. You know how Mary hates me. Alright, you know how Mary would do anything.

[Walde]: Well it's documented. There's no reason for her to make it up.

[Dow]: Well listen CeCe, never in a million years.

[Walde]: Well, I thought never in a million years too Keith. Did you do anything to [J.]?

[Dow]: No.

---

[10] Mary is Dow's ex-wife.

[11] The first initial of the name used in the recording is used to protect the privacy of the individuals. The record does not offer any information about these individuals.

[Walde]: Did you do anything to [S.]?

[Dow]: No. God no, CeCe.

[Walde]: What's, what's Corey's last name?

[Dow]: Strong.

[Walde]: Strong?

[Dow]: Yes. Victoria Strong.

[Walde]: 'kay, (unintelligible). Well I will call her and ask her.

[Dow]: You can.
. . . .
[Dow]: You've talked to my cousins.
. . . .
[Walde]: I have talked to [T.].

[Dow]: Yeah.

[Walde]: Yeah. Because uh, Mary said something about the way you used to play with the girls when they were little.

[Dow]: Absolutely ridiculous CeCe.
. . . .
[Dow]: . . . And everything that Mary's saying and everything else, it's not true. 'Kay?

[Walde]: Why would she say that Keith?
. . . .
[Dow]: CeCe, CeCe, you know how Mary was from the beginning. Why, why wouldn't she say something before? You know what I mean? She never mentioned anything like that before?

[Walde]: She did mention something like that before.

Suppl. CP, Ex. 1, at 5-9.

Dow objected to the admission of the recording in its entirety because of Walde's statements to Dow regarding her conversation with Dow's ex-wife. Dow argued that Walde's

statements about Dow's ex-wife were not relevant, would be a violation of ER 403, and would constitute hearsay. Dow also argued that it could "cause the jury to speculate on things that just aren't a part of this case." 5A VRP at 894. The State argued that Walde and Dow "never get into, I would say, details enough that I think the jury would understand what they are talking about." 5A VRP at 893. The State further argued that it did not intend to ask Walde additional questions related to her statements about Dow's ex-wife. The State also asserted that the recording "can't be redacted." 5A VRP at 893. The State noted that Dow denied Walde's accusations, "there's no indication elsewhere that" the accusations were true, and the "State is not bringing in that evidence" or "asking any questions about it." 5A VRP at 895.

The trial court ruled that the recording was admissible in its entirety. With regard to Walde's statements about Dow's ex-wife, the trial court also ruled that it did not:

> [S]ee any prejudice by it being in there that, you know, the idea being that the jury is going to speculate. If, in fact, it could be redacted, when are [sic] blanks in a consistent flow of a conversation in many ways create more speculation than something that seems so minor—appears to be so minor and it doesn't go to any of the issues before the Court. So, it's going to be left in.

5A VRP at 895.

a. Relevance

Relevant evidence is generally admissible, but irrelevant evidence is inadmissible. ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401; *State v. Haq*, 166 Wn. App. 221, 261-62, 268 P.3d 997 (2012). Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403. The burden of demonstrating a proper purpose is on the proponent of

the evidence. *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). We will not reverse due to an error in admitting evidence that does not result in prejudice to the defendant. *Bourgeois*, 133 Wn.2d at 403. An error requires reversal if, within a reasonable probability, the error materially affected the outcome of the trial. *Bourgeois*, 133 Wn.2d at 403.

Dow argued, and the trial court implied, that Walde's statements regarding statements made by Dow's ex-wife were not relevant to the issues in the case. *See* 5A VRP at 895 (the trial court found that Walde's statements do not "go to any of the issues before the Court."). 5A VRP at 895. And the State, in oral argument before us, conceded that Walde's statements regarding statements made by Dow's ex-wife were not relevant. Dow was not charged for any alleged misconduct referenced by Walde and the State noted that there was no indication that Dow's ex-wife's accusations were true. Therefore, because Walde's statements about what Dow's ex-wife said did not address the issues before the trial court, they were not relevant. And, because Walde's statements regarding statements made by Dow's ex-wife were not relevant, the trial court erred by admitting them.

b.      Harmless error

As stated above, we will not reverse due to an error in admitting evidence that does not result in prejudice to the defendant. *Bourgeois*, 133 Wn.2d at 403. An error requires reversal if, within a reasonable probability, the error materially affected the outcome of the trial. *Bourgeois*, 133 Wn.2d at 403.

Walde's statements referencing statements made by Dow's ex-wife were highly prejudicial. And the trial court did not instruct the jury on how to weigh or consider Walde's statements. Therefore, Walde's statements could have been viewed as evidence that Dow had

molested other children, and that because he molested other children, he likely molested K.W.  A reasonable probability exists that Walde's statements materially affected the outcome of the trial.

It is untenable that the trial court found the accusations that Dow committed the same acts under the same circumstances at issue here, did not "go to any of the issues before the Court."  5A VRP at 895.  Because the trial court abused its discretion by admitting highly prejudicial, irrelevant statements, we reverse Dow's conviction and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Maxa, P.J.

_____
Sutton, J.