NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 3 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SPOKANE INDIAN TRIBE; UNITED STATES OF AMERICA, | No. 21-35502 |
| Plaintiffs-Appellees, | D.C. No. 2:72-cv-03643-SAB |
| v. | |
| | MEMORANDUM* |
| DAN SULGROVE; LESLIE SULGROVE; CHAMOKANE LANDOWNERS ASSOCIATION, INC., | |
| Objectors-Appellants, | |
| v. | |
| DAWN MINING CORP; STATE OF WASHINGTON; CHRISTOPHER M. NEWHOUSE, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Eastern District of Washington
Stanley A. Bastian, Chief District Judge, Presiding

Argued and Submitted July 5, 2022
Portland, Oregon

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: WATFORD, R. NELSON, and LEE, Circuit Judges.

Objectors are Chamokane Creek Basin ("Basin") landowners who challenge the modification of a judgment that affects water rights in the Basin. We dismiss the appeal because Objectors lack standing.

1. The United States established a reservation for the Spokane Indian Tribe ("Tribe"), which included a right to Basin water to fulfill the purpose of this reservation. The United States filed the original lawsuit seeking judicial confirmation of the Tribe's water rights in the Basin. This lawsuit did not include permit-exempt users in the Basin.

After a trial, the district court found that the Tribe held a water right senior to most other Basin water users. The court also determined the water rights for the named Defendants. The court did not adjudicate the water rights of certain de minimis users, finding that these uses of water should always be available.

About 25 years later, a report showed that the Basin's water flow was not meeting the Tribe's water right. The suspected cause was either that de minimis water users were using more water than allowed under Wash. Rev. Code § 90.44.050, or that the number of de minimis users had increased. The Tribe, the United States, and Washington ("Government Parties") proposed a settlement to fix the issue, but avoid adjudicating these users. This settlement included a provision that the United States and Tribe would not sue non-parties for drawing less than one

2

acre-foot per year (about 900 gallons per day), and any enforcement under state law would require State approval.

The Government Parties presented the settlement to the district court and requested that the judgment be modified. The district court entered an order to show cause as to why the court should not approve the settlement and modify the judgment. The court received five objections, including a joint objection by Appellant-Objectors.

After a hearing, the district court approved the settlement and modified the judgment. Importantly, the court made the following change: "The undisputed evidence is that normal stock water use . . . and domestic water use is de minimus and does not include impoundments. The [Judgment] is therefore adjusted to reflect that these uses are not included in the judgment and should always be available," to "Water for domestic use and normal stock water use at the carrying capacity of the land without the use of impoundments is included in this Judgment, but it is neither adjudicated nor quantified at this time." Objectors appealed this decision.

2.    "The standing Article III requires must be met by persons seeking appellate review." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997). This requirement is jurisdictional and cannot be waived, *see Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019), and must be considered "whether or not the issue was raised in the district court," *Maricopa-Stanfield Irrigation & Drainage*

*Dist. v. United States*, 158 F.3d 428, 433 (9th Cir. 1998). At a minimum, standing requires that Objectors show "(1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision." *Va. House of Delegates*, 139 S. Ct. at 1950.

3.      Objectors argue that the original language protected de minimus water users like them from future curtailment and regulation. They maintain that the district court performed a general stream adjudication, and that the judgment affected all water users in the Basin, not just the water users brought into court.

These arguments are flawed because the original judgment provided no protection for Objectors. First, "[a] general adjudication . . . is a process whereby all those claiming the right to use waters of a river or stream are joined in a single action to determine water rights and priorities between claimants." *State Dep't of Ecology v. Acquavella*, 674 P.2d 160, 161 (Wash. 1983). Even though the district court made some stray comments suggesting that the adjudication may be a general stream adjudication,[1] it did not do so because not all water users in the Basin were joined. Only permitted water users were joined; de minimis water users, like Objectors, were not.

---

[1] For example, the original judgment defined the Basin "to include the entire Chamokane Creek System," and that the district court had "jurisdiction to adjudicate the surface and ground waters of the" Basin.

Second, Washington law directly contradicts the theory that exempt uses are protected from adjudication. "[A]n appropriator's right to use water . . . is subject to senior water rights." *Whatcom County v. Hirst*, 381 P.3d 1, 9 (Wash. 2016). This applies to permit-exempt and de minimis uses because "any withdrawal of water impacts the total availability of water," and thus "an appropriator's right to use water from a permit-exempt withdrawal is subject to senior water rights." *Id.* Even with the language in the original judgment, Objectors could have been sued at any time by senior water holders such as the Tribe.

Further, the modified judgment and settlement agreement protects Objectors more than before. The agreement states that the Government Parties will not adjudicate permit-exempt users that draw less than one acre-foot per year. This gives Objectors some legal protection where originally there was none.

4.      Because Objectors cannot claim a redressable injury caused by the modification of the judgment, the appeal is **DISMISSED.**