935 P.2d 595 (1997)
131 Wash.2d 746
In the Matter of the Determination of the Rights to the Use of the Surface Waters of the Yakima River Drainage Basin, in Accordance with the Provisions of Chapter 90.03, Revised Code of Washington,
The STATE of Washington, DEPARTMENT OF ECOLOGY, Plaintiff/Respondent/Cross Appellant,
v.
James J. ACQUAVELLA, Ahtanum Irrigation District, Benton Irrigation District, Broadgauge Ditch Company, Cascade Irrigation District, Columbia Irrigation District, Ellensburg Water Company, Fowler Ditch Company, Fruitvale-Schanno Ditch Company, City of Grandview, Grandview Irrigation District, Granger Irrigation District, Home Irrigation District, City of Granger, Kiona Irrigation District, Konewock Ditch Company, Town of Mabton, Moxee Ditch and Moxee Ditch Sub A, Moxee Hubbard Ditch Company, Naches-Selah Irrigation District, New Schanno Ditch Company, Old Union Ditch Company, Outlook Irrigation District, Piety-Flat Ditch Company, City of Prosser, Prosser Falls Land & Power Co., Prosser Irrigation District, R.S. & C. Irrigation Company, City of Richland, Selah-Moxee Irrigation District, Snipes Mountain Irrigation District, Special Warren Act Tracts (Michell & Rank), Sunnyside Valley Irrigation District, City of Sunnyside, Union Gap Irrigation District, West Side Irrigation Company, Yakima Valley Canal Company, City of Zillah, and Zillah Irrigation District, Defendants,
Yakima-Tieton Irrigation District, Kennewick Irrigation District, Kittitas Reclamation District, Roza Irrigation District, Sunnyside Division Board of Control, United States of America, City of Yakima, and Yakima Reservation Irrigation District, Defendants/Appellants, and
Yakama Indian Nation, Defendant/Cross Appellant.
No. 63401-7.
Supreme Court of Washington, En Banc.
Argued November 19, 1996.
Decided April 24, 1997.
*597 Katherine P. Ransel, Seattle, Amicus Curiae on behalf of American Rivers.
Halverson & Applegate, Donald H. Bond, Lawrence E. Martin, Yakima, Cone, Gilreath, Ellis & Cole, John P. Gilreath, Ellensburg, Preston, Gates & Ellis, Elizabeth Thomas, Seattle, Flower & Andreotii, Charles Flower, Patrick Andreotti, Yakima, Raekes, Rettig, Osborne, Forgette & O'Donnell, Francois X. Forgette, Brian Iller, Kennewick, Cowan, Walker, Jonson, Moore, Nickola & Heye, Thomas A. Cowan, Jr., Richland, Raymond L. Paolella, Lyon, Weigand, Suko & Gustafson, J. Eric, Gustafson, Jeffrey R. Cutter, Yakima, for Appellant.
Talbott, Simpson, Gibson, Davis & Bruns, Jerry D. Talbott, James E. Davis, Yakima, Mark Kunkler, Sunnyside City Attorney, Sunnyside, Velikanje, Moore & Shore, Inc., PS, Carter L. Fjeld, Yakima, Jack Hockberger, U.S. Dept. of the Interior, Boise, ID, Terry Miller, Kennewick, for Defendant.
Charles O'Connell, U.S. Department of Justice, Washington, DC, Yakima Indian Nation, Toppenish, Cockrill & Weaver, Timothy R. Weaver, Yakima, Peter A. Appel, Lois J. Schiffer, Robert L. Klarquist, Washington, DC, Jeffrey Schuster, Seattle, for Respondents.
*596 DOLLIVER, Justice.
In a direct appeal, the Yakima-Tieton Irrigation District (YTID) challenges several aspects of the trial court's ruling on YTID's water right. The Department of Ecology and numerous other parties have cross-appealed.
This direct appeal arises from a general adjudication of water rights in the Yakima River Basin that began in 1977. Other matters concerning the adjudication have been before this court two previous times. In the first appeal, this court allowed the general adjudication to proceed even though personal service of process had not been served on over 40,000 individual parties who used water from the basin. Instead, the court approved service on the 4,000-plus water distributing entities who serve the individual users. Department of Ecology v. Acquavella, 100 Wash.2d 651, 674 P.2d 160 (1983) (Acquavella I.) The second appeal involved the quantity of water reserved by the federal government for the Yakima Indian Nation. Department of Ecology v. Yakima Reservation Irrigation Dist., 121 Wash.2d 257, 850 P.2d 1306 (1993) (Acquavella II.) This third appeal involves the trial court's water award to just one of many water claimants, the Yakima-Tieton Irrigation District.
Yakima River Basin History
The Reclamation Act, 43 U.S.C. § 371 (originally enacted as Act of June 17, 1902, ch. 1093, 32 Stat. 388), authorized the Secretary of the Interior to construct large federal irrigation projects to reclaim and render productive arid and semi-arid lands. The projects set up under the Reclamation Act were to be operated by the Bureau of Reclamation (BOR). In carrying out the provisions of the Act, the Secretary had to comply with applicable state laws. 43 U.S.C. § 383. Because of this requirement, the Secretary would not undertake any project in a state without the approval of that state's legislature.
In 1905 the Washington State Legislature passed laws expressly allowing the United States to acquire lands and water rights in order to construct and operate reclamation projects. Laws of 1905, ch. 88, at 180 (codified in RCW 90.40any reference to acts done under the authority of these 1905 laws will cite the current codification of the laws). In that same year, pursuant to RCW 90.40.010 and RCW 90.40.030, the United States began to withdraw all unappropriated waters in the Yakima River Basin. This federal withdrawal was extended numerous times until 1951, at which point any remaining unappropriated waters reverted back to the state. Any water rights perfected during the period of federal withdrawal date back to the initial application in 1905. RCW 90.40.040.
The Yakima-Tieton Irrigation District was formed in 1918, and it is one of the several *598 districts that receives its water from reservoirs constructed and maintained by the United States pursuant to the Reclamation Act. In 1939, the United States and two irrigation districts initiated a lawsuit to determine how to recover certain costs arising from the operation of the Yakima Project. The defendants cross-claimed for a general adjudication of water rights in the Yakima Basin, and in 1945, to avoid further litigation, the parties signed a Consent Decree which set out the United States' obligationsin terms of quantity of water it had to deliver to each of the parties involved. Kittitas Reclamation Dist. v. Sunnyside Valley Irrigation Dist., Civil Action No. 21 (E.D.Wash.S.Div. Jan. 31, 1945). The United States District Court for Eastern Washington has maintained jurisdiction over issues arising from the 1945 Consent Decree. See, e.g., Kittitas Reclamation Dist. v. Sunnyside Valley Irrigation Dist., 626 F.2d 95 (9th Cir.1980), cert. denied, 449 U.S. 1079, 101 S.Ct. 861, 66 L.Ed.2d 802 (1981); Schinmann v. United States, 618 F.Supp. 1030 (E.D.Wash.1985), aff'd mem., 811 F.2d 1508 (9th Cir.), cert. denied, 484 U.S. 924, 108 S.Ct. 286, 98 L.Ed.2d 246 (1987).
YTID was a party to the 1945 Consent Decree. Under the decree, YTID's primary water right was listed as 96,000 acre feet (a.f.) for annual use during the irrigation season, and YTID was also assigned another 18,000 a.f., which was transferred from another irrigation district that did not need the water. The decree stated the BOR would sell the 18,000 a.f. to YTID. The decree placed no restrictions on the 18,000 a.f. awarded to YTID.
Pursuant to the 1945 Consent Decree, YTID amended its contract with the BOR. The contract mentioned that the amount of water delivered to YTID in prior years had been insufficient, and the contract also noted YTID's desire to have an additional water supply in low water years. The contract then granted the 18,000 a.f. to YTID, on the condition that delivery of the 18,000 a.f., in addition to YTID's normal entitlement of 96,000 a.f., did not exceed the safe carrying capacity of YTID's canals. The contract required YTID to pay the construction costs for storage works to hold the 18,000 a.f., and YTID also had to pay an annual maintenance fee for the use of the water. YTID has never been able to accept delivery of 114,000 a.f. (96,000 plus 18,000) because that quantity of water could not be delivered without exceeding the safe carrying capacity of YTID's canals.
The United States ended its withdrawal of water under RCW 90.40.030 in 1951. Afterward, the BOR filed a surface water application with the Department of Ecology's predecessor, the Department of Conservation and Development, Division of Water Resources, for the use of irrigation water in the Tieton District. The State agency determined YTID's water use pre-dated the 1917 Water Code, such that a water permit was unnecessary to maintain YTID's water usage.
In 1974, pursuant to RCW 90.14.041, the BOR filed a water rights claim for waters used by YTID. It is unknown if the Department of Ecology (DOE) ruled on the claim prior to the initiation of this adjudication in 1977.
The adjudication and YTID's award
For a detailed history of the adjudication, see Acquavella I and II. Prior to ruling on any of the claimants' water rights, the trial court divided the water claimants into four different categories. See Acquavella II, 121 Wash.2d at 262, 850 P.2d 1306. YTID is classified as a major claimant with state-based water rights. In 1992 the trial court made several threshold rulings as to how the major claimants' water rights were to be determined. Clerk's Papers at 371-408; Clerk's Papers at 409-12. DOE sought direct review of those threshold rulings, but this court denied review. Department of Ecology v. Ellensburg Water Co., No. 59630-1 (Jan. 15, 1993) (Commissioner's Ruling Den. Mot. For Discretionary Review). The trial court conducted further proceedings to hear evidence on YTID's water claims, after which the court ruled on YTID's entitlement. The ruling specifies the quantity of YTID's water entitlement, and it also describes the land to which the water right is appurtenant.
In determining the quantity of water awarded to YTID, the trial court gave much *599 deference to the amount specified in the 1945 Consent Decree. As mentioned above, the Consent Decree and YTID's contract listed YTID's water rights as 114,000 a.f. during the irrigation season, but only to the extent that YTID could accept delivery of the water without exceeding the safe carrying capacity of YTID's canals. The trial court determined that YTID could, at most, carry 110, 700 a.f. safely in its canals. The trial court then awarded YTID the 110,700 a.f. for the irrigation season. Two assignments of error have been raised pertaining to the quantification aspect of the trial court's order.
Besides specifying the quantity of a claimant's water entitlement, a water rights certificate resulting from a general adjudication must describe "the land to which said water right is appurtenant...." RCW 90.03.240. In accordance with this requirement, the trial court entered a finding of fact and order describing YTID's water right as being appurtenant to 27,900 irrigable acres. The trial court also stated that YTID's "current irrigable acreage is subject to change based on future reclassification of the Bureau of Reclamation." Clerk's Papers at 764. Two assignments of error have been raised as to the classification of acreage.
ISSUES PRESENTED FOR REVIEW:
YTID assigns two errors to the trial court's orders. First, YTID does not dispute the total quantity of water awarded, but YTID argues 18,000 a.f. of the amount awarded should have been classified specifically as standby/reserve water. If the water is classified as standby/reserve, according to YTID's argument, then the water will not be subject to relinquishment through nonuse of five years or more. See RCW 90.14.140(2)(b). This first assignment of error will be referred to as the Standby/Reserve Issue. YTID's second error challenges the appropriateness of the statement, quoted in the previous paragraph, concerning the BOR's reclassification of irrigable acres within YTID. This will be referred to as the Reclassification Issue.
DOE assigns two errors to the trial court's order. First, DOE challenges the trial court's reliance on the 1945 Consent Decree as evidence of YTID's water right. DOE claims the trial court should have established YTID's right by looking at actual, past beneficial use of the water; and DOE asserts YTID's past actual use does not support the quantity awarded. This will be referred to as the Beneficial Use Issue. The question of whether YTID may have relinquished any water by reason of nonuse will also be addressed under the beneficial use section. DOE's second assignment of error challenges the trial court's use of the irrigable acres category instead of the actual irrigated acres category. DOE alleges YTID's water right should be limited by the number of actual acres previously irrigated. This second assignment of error will be referred to as the Irrigable/Irrigated Issue.
To sum up, four central issues are properly before this court on appeal. They are listed in the order in which they will be discussed:
1. Beneficial Use and Relinquishment;
2. Standby/Reserve;
3. Irrigable/Irrigated; and
4. Reclassification of Irrigable Acres.

Issue One: Beneficial Use and Relinquishment
A. Beneficial Use
A general adjudication is a special form of quiet title action to determine all existing rights to the use of water from a specific body of water. Department of Ecology v. Grimes, 121 Wash.2d 459, 466, 852 P.2d 1044 (1993). The procedure is governed by RCW 90.03.110-.245, and the adjudication may not be used to lessen, enlarge or modify existing water rights. Grimes, 121 Wash.2d at 466, 852 P.2d 1044 (citing RCW 90.03.010). In conducting a water adjudication, the trial court generally considers two elements when confirming existing rights: "(1) the amount of water that has been put to beneficial use and (2) the priority of water rights relative to each other." Grimes, 121 Wash.2d at 466-67, 852 P.2d 1044 (footnote omitted). Only the first element, the amount of water that has been put to beneficial use, is at issue here.
The principle that water must be used for a beneficial purpose is a fundamental tenet of the philosophy of water law in the West. 1 *600 Wells A. Hutchins, Water Rights Laws in the Nineteen Western States 9 (U.S. Dep't of Agriculture 1971). Under both state and federal law, beneficial use is "the basis, the measure and the limit" of the right to the use of water. Ickes v. Fox, 300 U.S. 82, 94, 57 S.Ct. 412, 416, 81 L.Ed. 525 (1937); Neubert v. Yakima-Tieton Irrigation Dist., 117 Wash.2d 232, 237, 814 P.2d 199 (1991); 43 U.S.C. § 372 ("beneficial use shall be the basis, the measure, and the limit of the [water] right."); see also RCW 90.03.010 ("all waters within the state belong to the public, and any right thereto, or to the use thereof, shall be hereafter acquired only by appropriation for a beneficial use...."). In its Memorandum Opinion Re: Threshold Issues, the trial court acknowledged beneficial use is the measure of a water right under both federal and state law. Clerk's Papers at 374.
DOE accuses the trial court of ignoring its own legal findings. DOE argues the trial court improperly confirmed a water right to YTID of 110,700 a.f. per irrigation season without making a finding of fact as to whether that quantity has ever been beneficially used. The record supports DOE's argument.
Instead of basing YTID's water right on its past beneficial use, the trial court appears to have quantified the right by taking the total amount of water specified in the 1945 Consent Decree, 114,000 a.f., and reducing that amount to account for the limitations of YTID's water delivery system. In its entire existence, YTID has never diverted or beneficially used 110,700 a.f. in an irrigation season. The most the District has ever diverted was 109,309 in 1929a year of severe drought.
The trial court's use of the capacity of YTID's delivery system as a basis for determining YTID's water right is inconsistent with beneficial use requirements, and it is inconsistent with the trial court's earlier ruling on another irrigation district's claim. In 1993, the court issued its Conditional Final Order for the Kittitas Reclamation District. In addressing whether the Kittitas Reclamation District was entitled to the maximum amount of water it could divert through its irrigation system, the court stated, "acknowledging a maximum annual quantity that could have potentially been diverted without requiring beneficial use of that water, would have disastrous implications to the integrity of the Yakima Project...." Clerk's Papers at 848.
Even though the trial court, in ruling on YTID's claim, referred to the beneficial use requirement, and even though the trial court correctly applied that requirement in a past ruling, for some reason the court based its quantification of YTID's water right on the quantity of water the District could potentially divert, without requiring past beneficial use of that water. The trial court must be reversed on the quantification of YTID's water right. There is no evidence in the record to support a finding that YTID has ever beneficially used 110,700 a.f.
We do not know how much water the court would have confirmed, or the method it would have used to calculate YTID's water right, had it based the right on actual evidence of beneficial use. On remand, the trial court must calculate beneficial use based upon diversion and actual use, as required by the law of this state.
The parties argue extensively about the effect of the 1945 Consent Decree and water delivery contracts on the trial court's quantification of YTID's water right. This issue is irrelevant. No party disputes that beneficial use is the sole measure of a water right. The "allocation" of water in the 1945 Consent Decree and water delivery contracts resulted from a settlement agreement between the parties. That agreement may be binding as to the respective rights and priorities amongst the parties, but the agreement cannot be used to avoid statutory requirements and create a state-based water right to any of those parties absent such right being based on actual beneficial use.
B. Relinquishment
When, in a general water adjudication, a court determines a water claimant's water right based upon evidence of historic beneficial use, the question will often arise whether the claimant has continued to use the same quantity of water up to the present day. If a *601 claimant used a large quantity of water in the first half of the century, but currently uses far less, the court must determine whether the claimant has abandoned or relinquished all or part of the water right.
The issue of abandonment and relinquishment is complex. Prior to 1967, water rights could be lost, or "abandoned," by nonuse under the common law. See Miller v. Wheeler, 54 Wash. 429, 435, 103 P. 641 (1909). A party challenging abandonment under the common law must show the water user intended to abandon, and actually did relinquish, all or a portion of the water right. Jensen v. Department of Ecology, 102 Wash.2d 109, 115, 685 P.2d 1068 (1984) ("The intent to abandon and an actual relinquishment must concur, for courts will not lightly decree an abandonment of a property so valuable as that of water in an irrigated region.") (quoting Miller, 54 Wash. at 435, 103 P. 641). Any challenger who asserts abandonment by YTID, based on YTID's nonuse of water in the years prior to 1967, must satisfy the common law standard for abandonment.
In 1967 the State Legislature enacted statutes codifying the common law principles of abandonment. Laws of 1967, ch. 233, §§ 13-18, at 1125 (codified at RCW 90.14.130 -.180). As of the effective date of the 1967 law, any water right holder who, for a period of five successive years, voluntarily fails, without sufficient cause, to use beneficially all or any part of the water right, will relinquish such right or a portion thereof. RCW 90.14.160. The Legislature created a narrow list of exceptions to the relinquishment statute. RCW 90.14.140. If a water user's reason for nonuse of all or part of its water right falls under an enumerated exception, such nonuse will not result in relinquishment of that water right. A challenge to YTID's water right based on nonuse after 1967 must rely on the statutory standards for relinquishment. Once a party has shown that YTID has failed to use any or all of its right for five successive years, YTID has the burden of showing how its nonuse falls under one of the narrow categories in RCW 90.14.140.
In its threshold memorandum and in its rulings on YTID's water right, the trial court refers to the relinquishment issue; but it is unclear whether the court actually made a finding of non-relinquishment with regard to YTID's water right.
In its threshold memorandum, the trial court discussed whether an irrigation district could theoretically relinquish a water right under RCW 90.14.160. The court first examined the statutory requirement that an entity abandon or voluntarily fail to use a water right. Citing to the fact that the BOR controls the amount of water that is released at any given time, the court stated that it would be very difficult for DOE to prove that an irrigation district had abandoned or voluntarily failed to use its full water right. The court also discussed whether a federal irrigation district would have sufficient cause, under RCW 90.14.140(1)(e), for nonuse of a portion of its water right. The court held that "`sufficient cause' for nonuse of a portion of the water is present within the districts and the Basin." Clerk's Papers at 395.
In its later ruling on YTID's claim, the court never discussed if the evidence demonstrated whether or not YTID had abandoned or voluntarily failed to use a portion of its water right. Instead, in its Report of the Court, it states no party asserted that YTID had abandoned or voluntarily failed to use this water. However, both the court's Supplemental Report and DOE's Response Brief indicate DOE did argue the relinquishment issue below. In its Supplemental Report of the Court, it responded to an exception by DOE regarding quantification and relinquishment by stating, "[T]here is no way to know if relinquishment is an issue." Clerk's Papers at 743.
Given that the court never entered findings of fact regarding whether YTID had abandoned or voluntarily failed to use a portion of its water right, we are unable to enter any rulings on this issue. DOE is not estopped from asserting forfeiture on remand. The trial court must employ a two-step analysis when quantifying YTID's water right. It must first determine YTID's vested water right, based on evidence of past beneficial use. It should then examine DOE's claim *602 that YTID has forfeited a portion of its right through abandonment or voluntary nonuse.
As discussed above, the trial court stated in its threshold memorandum that, because a federal irrigation district receives its water from the BOR, it has "sufficient cause" under RCW 90.14.140(1)(e) for nonuse of its water. Clerk's Papers at 395. The court's interpretation of the statute is questionable. The cited subsection excuses nonuse of water if such nonuse is a result of
[f]ederal laws imposing land or water use restrictions either directly or through the voluntary enrollment of a landowner in a federal program implementing those laws, or acreage limitations, or production quotas.
RCW 90.14.140(1)(e). It is unclear from the record whether an irrigation district, by the mere fact of its receiving water from the BOR, can rely on the cited subsection as an excuse for nonuse of water. The issue, however, is not ripe for review at this time. Until the trial court specifically finds, based on the evidence, whether YTID has forfeited a portion of its water right, this court has no basis for knowing what legal standard the trial court will actually apply to the facts. Although the trial court discussed this issue in its threshold memorandum, the court's interpretation of the statute will not become ripe for review until it relies upon that legal standard as a basis for quantifying a water right. If and when an aggrieved party appeals on such a basis, this court will be able to consider the issue thoroughly, with the advantage of a detailed record and adequate briefing from the parties.

Issue Two: Standby/Reserve
YTID argues the trial court should have classified a portion of its entitlement as standby or reserve water. The court extensively detailed both YTID's and DOE's arguments on this issue in its supplemental ruling and declined to apply the designation to any of YTID's award.
The standby/reserve issue is directly related to the question of relinquishment. If water is held as a standby or reserve water supply to be used in time of drought, then it is not subject to relinquishment by nonuse. RCW 90.14.140(2)(b). If, on remand, the court quantifies YTID's entitlement by applying the proper beneficial use analysis, and DOE then argues that the quantity awarded should be reduced because of abandonment, the court may have to enter a specific ruling on the standby/reserve question. Until then, the issue is not ripe for review.
YTID implies that any quantity of water described as standby/reserve as a result of this adjudication would protect YTID's entitlement from future claims of relinquishment. This argument is unsupported by law. No statute authorizes a trial court presiding over a general water adjudication to "classify" a party's water right as standby/reserve so as to protect that entitlement from future challenges of nonuse. Whether water is used as standby or reserve is a question of fact that is relevant only at the time one asserts relinquishment.

Issue Three: Irrigable/Irrigated
DOE claims the trial court erred when it specified that YTID's entitlement was appurtenant to 27,900 irrigable acres. DOE claims state law requires the water to be appurtenant to land to which the water has beneficially been applied in the pasti.e., appurtenant to irrigated acres. Implicit in DOE's argument is the premise that YTID cannot irrigate any land which has not been irrigated historically.
DOE's arguments are misplaced. When the trial court set YTID's right as appurtenant to 27,900 irrigable acres, it obtained that number of acres from reports which YTID had compiled and submitted to the BOR. The BOR uses the number of irrigable acres, among other things, as a figure against which to distribute the costs of operating the reclamation project. See 43 U.S.C. § 492. All irrigable lands within the district that are capable of using water from the project, whether or not they actually receive water, must pay a minimum fee toward operation costs. Id. As will be discussed below, the trial court's reliance on this category of irrigable acres is justified under RCW 90.03.380.
An individual's water right is appurtenant to the land on which the water is beneficially *603 used; and that individual cannot transfer the use of that water to different land without first requesting DOE approval. RCW 90.03.380. This requirement explains why a water right certificate must specify the land to which the right attaches. In an irrigation district, however, a water right can be transferred and applied to any land within the district without DOE oversight:
A change in place of use by an individual water user or users of water provided by an irrigation district need only receive approval for the change from the board of directors of the district if the use of water continues within the irrigation district[.]
RCW 90.03.380. Although an irrigation district's water right is legally appurtenant to the land on which the water is applied, the right can be shifted to any land in the district on which the water can be beneficially used i.e., the right can be applied to any irrigable acreage. For this reason, it makes sense for YTID's certificate to denote the number of acres to which the water can be applied beneficially. The number of acres irrigated each season may change from year to year; thus, the actual irrigated category is less useful than the irrigable category in denoting the extent of YTID's water right.
In attacking the trial court's reference to irrigable acres, DOE implies that YTID's water right is somehow unlawfully enlarged by making the right appurtenant to irrigable acres rather than irrigated acres. DOE cites Department of Ecology v. Grimes, 121 Wash.2d 459, 852 P.2d 1044 (1993) and Neubert v. Yakima-Tieton Irrigation Dist., 117 Wash.2d 232, 814 P.2d 199 (1991), in support of its argument that the trial court should have focused on actual irrigated acres. Grimes and Neubert involved the court's analysis of whether the quantity of water used by a claimant was reasonable. Part of the reasonable use analysis requires the court to determine how much water is being used per acre of land, after which the court determines whether the amount applied per acre is useful (beneficial) or wasteful. It is obvious that a reasonable use analysis would have to rely on the irrigated acres category, and not the irrigable acres category. If the trial court applied a reasonable use analysis to establish YTID's water right, it would have to base that analysis on the number of actual irrigated acres.
The issue revolving around the acreage category that is presented by this appeal, however, involves only the question of what category of acreage should be specified in YTID's water right certificate. As discussed above, it is more appropriate for the certificate to indicate irrigable acreage, since YTID can legally distribute its water over any irrigable acreage within the District.

Issue Four: Can the BOR Reclassify YTID's Acreage?
After ordering that YTID's water right be appurtenant to the irrigable lands within the District, the court stated, "The current irrigable acreage is subject to change based on future reclassification of the Bureau of Reclamation." Clerk's Papers at 764. YTID objects to the inclusion of the "reclassification" language in the trial court's order. YTID's objection is without merit.
As mentioned above, the category of irrigable acres is used by the BOR to allocate costs of operating the project. According to the Reclamation Act, the BOR can, upon the request of an irrigation district, recalculate the number of irrigable acres within a district and make amendments to the district's repayment contract. 43 U.S.C. §§ 485, 485b, 485g. YTID reads the trial court's language regarding reclassification as somehow allowing BOR to unilaterally reclassify YTID's acreage without regard to the statutory requirements for undergoing such a reclassification under 43 U.S.C. subch. X (sections 485-485k). This fear is unfounded. The trial court's language regarding reclassification merely recognizes the possibility that the number of irrigable acres in the District may be recalculated in the future, under federal law. Nothing in the trial court's order purports to interfere with the statutory requirements necessary for a reclassification of acreage to occur.
We remand this case for further proceedings consistent with our holdings.
SMITH, MADSEN, ALEXANDER, TALMADGE and SANDERS, JJ., concur.
*604 GUY, Justice (concurring in part; dissenting in part).
I respectfully dissent from the majority opinion's analysis and resolution of the beneficial use issue. In my view, the majority takes too narrow and too simplistic a view of the beneficial use standard and its application in this very complex case.
The majority concludes that the trial court employed a simple formula to determine the quantity of water that the Yakima-Tieton Irrigation District is entitled to distribute to its customers. "The trial court determined that YTID could, at most, carry 110,700 a.f. safely in its canals. The trial court then awarded YTID the 110,700 a.f. for the irrigation season." Majority at 599. The majority then states:
[F]or some reason the [trial] court based its quantification of YTID's water right on the quantity of water the District could potentially divert, without requiring past beneficial use of that water.
Majority at 600.
My reading of the trial court's rulings and of the record before us in this appeal does not support a determination that the trial court applied such a simple and flagrantly faulty standard to determine beneficial use.
This water adjudication has been in litigation for nearly 20 years. The same trial judge has been assigned to the case since its inception.[1] Twice we have affirmed various rulings of this trial judge in this case. Department of Ecology v. Acquavella, 100 Wash.2d 651, 674 P.2d 160 (1983) (Acquavella I); Department of Ecology v. Yakima Reservation Irrigation Dist., 121 Wash.2d 257, 850 P.2d 1306 (1993) (Acquavella II.) The trial judge's reasoning and rulings on the beneficial use issue and on other issues now before this court are set forth in more than 100 pages in a conditional final order, a memorandum opinion on threshold issues, and a report and supplemental report. Without unreasonably lengthening this dissenting opinion, it is impossible to relate in detail the breadth and depth of the trial court's analysis of the beneficial use issue. I therefore point only to some of the evidence and law considered by the trial court, in an attempt to demonstrate that the trial court's decision involved far more than just measuring the design capacity of YTID's canals.
The record reflects that in making its ruling on quantification,[2] the trial court properly considered both federal and state statutes and the precedent established by this court in Acquavella II, 121 Wash.2d 257, 850 P.2d 1306, Department of Ecology v. United States Bureau of Reclamation, 118 Wash.2d 761, 827 P.2d 275 (1992), and other cases. The trial court recognized that the federal Bureau of Reclamation has almost total control of the waters in the Yakima River basin. The United States has withdrawn all unappropriated water; it owns the storage facilities and it owns most of the diversion facilities. The Bureau has complete control, subject to statute and regulation, over the release of whatever storage waters are available. See, e.g., Ecology v. Reclamation, 118 Wash.2d at 771-72, 827 P.2d 275. Any water released by the Bureau is required to be beneficially used. See 43 U.S.C. § 372.
The trial court understood that the YTID's priority and allocation right to receive water from the Bureau of Reclamation was reflected in a 1945 agreed judgment (consent decree) entered by the United States District Court for the Eastern District of Washington. While this judgment did not in and of itself establish a water right, the consent *605 decree did provide judicial recognition of the water rights that had been established at the time the decree was entered and, depending on subsequent events, continued to be evidence of an established water right. As the trial court noted, in Acquavella II we determined that this consent decree was binding on the Yakima Indians "insofar as it sets forth a quantification for irrigation rights" because the Yakima Indian Nation was a party to the federal action and agreed to the entry of the order. Acquavella II, 121 Wash.2d at 298, 850 P.2d 1306. Based on our decision, the trial court concluded that if the consent decree was binding on one party to the agreement, it must be binding on all partiesto the extent that the water allocated therein continued to be beneficially used.
The trial court also considered the contracts between the United States and the irrigation district, under which the districts were obligated to pay for the construction, storage and maintenance of the reservoirs and canals of the Yakima Project in exchange for the Bureau's release of certain quantities of water for distribution in the irrigation districts.
The trial court additionally reviewed 41 years of diversion records, evidence showing improvements made to YTID properties over the years, and it considered the safe carrying capacity of the irrigation district's canals when it limited the quantity of water to which the irrigation district has been historically entitled.
The trial court considered the fact that the quantity of water made available to the irrigation district each year is controlled by the Bureau of Reclamation. "Water delivery may be, and frequently has been, prorated by the Bureau due to drought conditions." Clerk's Papers at 749. Thus the trial court also considered the "carry-over" needs of the YTID.
In quantifying the right that the YTID is entitled to receive for distribution, the trial court considered the history of diversions, the history of the relationships of the parties, the relevant state law concerning the perfection of a water right, the conditions of the Yakima River basin and the history of the Yakima Project, the design capacity of the YTID, the purposes for which the water is used within the project service area, "water duty"[3] and other factors, and the policies, regulations and statutes of this state and the United States.
The design capacity of YTID's canals was but one of many factors considered in determining the quantity of water the irrigation district is entitled to receive. It was not the determinative factor, as the majority suggests.
In determining whether the irrigation district's right to water should be reduced for failure to actually use the quantity to which the district was entitled, the trial court ruled RCW 90.14.180 governed. That statute provides, in pertinent part:
Any person hereafter entitled to divert or withdraw waters of the state through an appropriation ... who abandons the same, or who voluntarily fails, without sufficient cause, to beneficially use all or any part of said right to withdraw for any period of five successive years shall relinquish such right or portion thereof, and such right or portion thereof shall revert to the state....
(Emphasis added.)
With respect to the relinquishment issue, I believe the trial court properly ruled that relinquishment would be difficult for the Department of Ecology to prove because the release of water to the irrigation districts is controlled by the Bureau of Reclamation and because districts are bound by their contracts with the Bureau to make the most economical use of the water available. The trial court ruled that, in light of these factors, when a district does not receive its full contractual amount of water, it would be difficult to determine that the district "abandoned" or *606 "voluntarily failed" to use that portion of the water right that it did not receive.
I concur in the result of the majority opinion on the issues of reclassification, standby/reserve water, and adjudication based on irrigable, rather than irrigated, acres. I would affirm the trial court in its entirety.
DURHAM, C.J., and JOHNSON, J., concur.
NOTES
[1] Washington's Constitution was amended to allow the trial judge, Walter Stauffacher, to complete this water adjudication after his retirement. Const, art. IV, § 7 (amend.80). This court has previously recognized that the primary impetus for the amendment was Judge Stauffacher's involvement in this case. "Judge Stauffacher was willing to complete the Acquavella litigation following his retirement, but without a constitutional amendment ... any of the approximately 2,500 parties could prevent him from doing so by refusing to consent to his appointment as a judge pro tempore." State v. Belgarde, 119 Wash.2d 711, 723-24 n. 6, 837 P.2d 599 (1992). See also Zachman v. Whirlpool Fin. Corp., 123 Wash.2d 667, 672, 869 P.2d 1078 (1994).
[2] It is not disputed that the purpose for which the water is used is a beneficial one. The records before the trial court showed that in 1990, 321, 647 acres of at least 20 crops were produced in the Yakima valley, for a value of $634,952,886. Only the quantity of water is at issue here.
[3] Water duty is that measure of water which, by careful management and use, without wastage, is reasonably required to be applied to any given tract of land for such period of time as may be adequate to produce therefrom a maximum amount of such crops as ordinarily are grown thereon. It is not a hard and fast measurement but is variable according to conditions. Department of Ecology v. Grimes, 121 Wash.2d 459, 469, 852 P.2d 1044 (1993).