IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| LOYAL PIG, LLC and COLUMBIA-SNAKE RIVER IRRIGATORS ASSOCIATION, | ) ) ) ) | No. 36525-5-III |
| Respondents, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT OF ECOLOGY, | ) ) ) | |
| Appellant, | ) ) | |
| WASHINGTON POLLUTION CONTROL HEARINGS BOARD, | ) ) ) | |
| Defendant. | ) | |

FEARING, J. —

*Washington's designation as "The Evergreen State" really only applies to half of the state.* "Irrigation in the Pacific Northwest," Washington State University Extension (2019).

Washington water law allows one holding a water right to change the location of the usage of the water through a process administered by the Washington State Department of Ecology (Ecology). As part of the application process, the water right

holder must calculate its annual consumptive quantity (ACQ) of water as defined by

RCW 90.03.380(1). In this appeal, we hold, based on RCW 90.03.380(1), that the

applicant must calculate anew its annual consumptive quantity with each change

application no matter if Ecology recently approved an earlier change. We thus reverse the

superior court.

FACTS

Despite a large record on appeal, the parties severely limit the facts outlined in

their briefs, perhaps because of the constrained questions on appeal. Loyal Pig, LLC

holds a water right certificate granted in 1970 to apply water to Franklin County

farmland. The law limits a water right to an amount of use per year, a rate of flow, a point

of diversion, and a location of application. Nevertheless, the water right holder may apply

for a change in the site of diversion, the place of application, or both.

In 2014, Loyal Pig's predecessor applied to the Benton County Water Conservancy

Board (Benton County board) for a change in location of the diversion of and a change in

the site of the application of a portion of the water right. When reviewing the 2014

change application, the Benton County board, as required by law, calculated the annual

consumptive quantity of water on the Franklin County farmland. The calculation would

limit the amount of water that Loyal Pig could apply on the new location of application.

2

The law calculates the ACQ by averaging the most recent five-year period of continuous beneficial water consumption used by the irrigator. The Benton County board calculated the ACQ with average water use from 2009 to 2013, the five most recent years before the 2014 application for change. Neither party identifies the amount calculated by the Benton County board. The Department of Ecology reviewed the Benton County board's decision, as required by law, and approved the change in the water right certificate. Because of a lower use of water, during 2009 to 2013, the change limited the amount of the water right from its original amount in 1970.

In January 2017, Loyal Pig submitted another application with the Franklin County Water Conservancy Board (Franklin County board) for an additional change in diversion location and place of application for the water right. In May 2017, the Franklin County board issued its decision approving the January application. In doing so, the board adopted the 2014 annual consumptive quantity amount, rather than calculating a new amount based on the years 2012 to 2016. The Franklin County board reasoned that it need not perform a new calculation since Loyal Pig filed the 2017 application within five years of the 2014 calculation. We do not know if the ACQ, based on years 2012 to 2016, would differ from any ACQ calculated for years 2009 to 2013. No party has performed

3

this calculation. The Department of Ecology is unable to perform the calculation because Loyal Pig refuses to provide the records needed.

The Department of Ecology reversed the Franklin County Water Conservancy Board's decision because the Franklin County board failed to perform a new annual consumptive quantity calculation for years 2012 to 2016. Loyal Pig, together with the Columbia Snake River Irrigators Association, an association of Mid-Columbia irrigating growers, appealed, to the Washington State Pollution Control Hearings Board (PCHB), Ecology's reversal of the Franklin County board's approval of the 2017 change application. We refer to the two challengers collectively as Loyal Pig.

Before the Pollution Control Hearings Board, Loyal Pig argued that the Department of Ecology should have utilized the annual consumptive quantity from the 2014 change application for the 2017 application for numerous reasons. First, the principle of res judicata precluded a new calculation. Second, a governing statute affords a five-year grace period for loss of water rights, and Ecology should apply this grace period when a water right holder applies for a second change in use within five years of the first application. Third, an Ecology policy, POL 1120, simplified the determination for an application change, and requiring a new calculation of the ACQ for each change would thwart this policy. Fourth, irrigators in the Columbia Basin have relied on

4

Ecology's application of the grace period when a water right holder applied for a second change within five years of a previous calculation of the ACQ.

Before the Pollution Control Hearings Board, the Department of Ecology argued that RCW 90.03.380 requires a full formal annual consumptive quantity calculation from the most recent five-year period no matter if the applicant for a change obtained a change approval within the last five years. For the 2017 change application, according to Ecology's interpretation of the statute, the ACQ would comprise water usage during 2014-2016 in addition to the previously calculated amounts for 2012 and 2013.

Both Loyal Pig and the Department of Ecology filed motions for summary judgment before the Pollution Control Hearings Board. In support of its motion, Loyal Pig submitted a declaration of Mark Nielson, clerk and alternate member of the Franklin County Water Conservancy Board, and Darryll Olsen, Columbia Snake River Irrigators Association board representative and member of the Benton County Water Conservancy Board. Mark Nielson averred that he attended "at least one presentation in which Ecology staff emphasized that conservancy boards, like Ecology itself, are entitled to rely upon prior decisions through the judicial doctrine of *res judicata*." Clerk's Papers (CP) at 499.

In his PCHB declaration, Darryll Olsen averred that "[t]he community of water law practitioners has for many decades long relied upon the five-year grace period in assessing water rights and change/transfer applications." CP at 601. Olsen's declaration attached a legal memorandum from attorney Tom McDonald. McDonald opined that the Franklin County Water Conservancy Board could use the 2014 ACQ analysis for the 2017 application as "[u]nder the law of administrative res judicata and collateral estoppel, courts will preclude the readjudication of claims and issues to enforce an administrative agency decision." CP at 186. In his confidential communication, McDonald also observed that, under Ecology POL 1120, Ecology may conduct a simplified tentative determination that would not require an ACQ analysis when an application is submitted within five years of a previously approved application.

In support of its motion, the Department of Ecology submitted declarations from employees Herman Spangle and Keith Stoffel. Spangle, an environmental specialist in Ecology's Eastern Regional Office Water Resources Program, reviewed Loyal Pig's change application for 2017. Spangle then determined an ACQ analysis would be required for the 2017 application because the proposed change would add other irrigated acres to the water right. Spangle averred that he concluded, along with Keith Stoffel, the

section manager of Water Resources, that Ecology needed to review irrigation records for years 2014 to 2016. Stoffel's own declaration corroborated Spangle's testimony.

The Pollution Control Hearings Board granted the Department of Ecology's motion for summary judgment.

PROCEDURE

Loyal Pig appealed to the Benton County Superior Court. Before the superior court, Loyal Pig moved for summary judgment on three grounds. First, Loyal Pig argued that language in chapter 90.14 RCW provided a five-year grace period, during which the legislature intended to protect a water user from relinquishment of his or her water right. Second, Loyal Pig contended that a conservancy board should be permitted to rely on its prior decisions under the doctrine of administrative res judicata. Third, Loyal Pig maintained that Ecology violated the Administrative Procedure Act, chapter 34.05 RCW, when it insisted on calculating a new annual consumptive quantity for the 2017 change application, because this insistence effectively adopted a regulation without following the administrative rulemaking process.

In support of its summary judgment motion, Loyal Pig submitted the declaration of Timothy Reierson and another declaration of Darryll Olsen. Timothy Reierson, a licensed professional engineer and a water rights consultant, declared that, from 1989 to 1996, he

7

worked at the Department of Ecology, during which time he prepared reports recommending approval, denial, or mediation of complex and politically sensitive water right applications and change or transfer applications. Reierson did not testify to any percipient knowledge that Ecology previously adopted or followed a policy or practice that allowed an applicant for a second change in the water right a five-year grace period for the calculation of an annual consumptive quantity. Nevertheless, he averred that any failure to follow such a policy would constitute a "new approach." CP at 460. Reierson noted that a grower who rotates crops on its land will fluctuate from year to year in the amount of water used.

In Darryll Olsen's declaration, Olsen avowed that the Department of Ecology, by reason of its rejection of the 2017 change application, informally adopted a new agency order, directive, or regulation of general applicability that refused to implement a longstanding five-year grace period against relinquishment of water rights. Olsen highlighted Ecology's POL 1120's promotion of a simplified procedure when forfeiture of water is not an issue. Olsen observed that, as early as 2009, Ecology moved away from this well-established procedure, taking the position that no grace period existed.

The Department of Ecology cross moved for summary judgment on Loyal Pig's claim of abuse of rulemaking authority. In support, Ecology submitted the declaration of

8

Mark Schuppe, current Department of Ecology operations manager for the Office of

Columbia River.  Schuppe stated that he had extensive experience in water rights

permitting and has worked with POL 1120 since its adoption.  Schuppe declared:

> [w]hile this policy does allow for 'simplified tentative
> determinations' in some circumstances, I understand this to be within the
> discretion of a permit writer and approving manager.  I would not interpret
> this policy to bar the review of 'annual consumptive quantity' (ACQ) if it
> was performed within five years of a previous ACQ analysis.

CP at 529.  Schuppe elaborated that another policy, POL 1210, did not bar a new ACQ

analysis with a second application:

> I have not, now or in the past, interpreted POL 1210 to bar an ACQ
> analysis within five years of a previous analysis, and I am not aware of
> anyone else at Ecology who has done so.

CP at 529.

The declaration of Mark Schuppe attached POL 1120, as well as POL 1210.  POL

1210 outlines the procedures that the Department of Ecology employs when reviewing

water right change applications pursuant to RCW 90.03.380(1) that seek to irrigate

additional acreage.  Unlike POL 1120, POL 1210 does not mention a simplified tentative

policy.

The Department of Ecology submitted a motion to strike portions of the

declarations of Darryll Olsen, Timothy Reierson, and Mark Nielson.  Ecology argued that

sections of the declarations were inadmissible hearsay and contained inadmissible legal opinions. The superior court refused to strike the entirety of the three declarations. Nevertheless, the court agreed that the declarations contained extensive legal opinions, and the court stated it would ignore the opinions.

The superior court reversed the Pollution Control Hearings Board and ruled that the Department of Ecology may not require a new annual consumptive quantity calculation when a water right holder applies for a second change in the water right within a five-year window. The superior court also ruled that Ecology abused its rulemaking authority. The court issued a permanent injunction that bars Ecology from requiring sequential ACQ calculations unless Ecology engages in the formal rulemaking process.

LAW AND ANALYSIS

RCW 90.03.380(1) and Two ACQs

This appeal raises the principal question of whether, under RCW 90.03.380, the Department of Ecology may insist that a water right holder calculate anew its annual consumptive quantity when Ecology, within the past five years, already calculated the holder's ACQ because of an earlier application for change.

No. 36525-5-III
*Loyal Pig, LLC v. Department of Ecology*

Although we do not deem the rules of review important in this appeal's context,

we recite those obligatory rules. This appeal arises from a Pollution Control Hearings

Board (PCHB) decision after superior court review. The Administrative Procedure Act,

chapter 34.05 RCW, governs appeals from the PCHB. *Public Utility District No. 1 of*

*Clark County v. Pollution Control Hearings Board*, 137 Wn. App. 150, 156-57, 151 P.3d

1067 (2007). The Court of Appeals reviews the PCHB's decision from the same vantage

as the superior court. *Skagit County v. Skagit Hill Recycling, Inc.*, 162 Wn. App. 308,

317, 253 P.3d 1135 (2011). This court may find the PCHB erred if the board erroneously

interpreted or misapplied the law. *Public Utility District No. 1 of Clark County v.*

*Pollution Control Hearings Board*, 137 Wn. App. at 157. The party asserting invalidity

bears the burden of demonstrating the invalidity of agency action. RCW 34.05.570(1)(a).

We consider the appeal to raise a purely legal question.

RCW 90.03.380(1) governs our decision. The laborious statute reads, in relevant

part:

> The right to the use of water which has been applied to a beneficial
> use in the state shall be and remain appurtenant to the land or place upon
> which the same is used: PROVIDED, HOWEVER, That the right may be
> transferred to another or to others and become appurtenant to any other land
> or place of use without loss of priority of right theretofore established if
> such change can be made without detriment or injury to existing rights.
> The point of diversion of water for beneficial use or the purpose of use may
> be changed, if such change can be made without detriment or injury to

11

existing rights.  A change in the place of use, point of diversion, and/or purpose of use of a water right to enable irrigation of additional acreage or the addition of new uses may be permitted *if such change results in no increase in the annual consumptive quantity of water used* under the water right.  For purposes of this section, "*annual consumptive quantity*" *means* the estimated or actual annual amount of water diverted pursuant to the water right, reduced by the estimated annual amount of return flows, *averaged over the two years of greatest use within the most recent five-year period* of continuous beneficial use of the water right.  Before any transfer of such right to use water or change of the point of diversion of water or change of purpose of use can be made, any person having an interest in the transfer or change, shall file a written application therefor with the department. . . .  If it shall appear that such transfer or such change may be made without injury or detriment to existing rights, the department shall issue to the applicant a certificate in duplicate granting the right for such transfer or for such change of point of diversion or of use. . . . The time period that the water right was banked under RCW 90.92.070, in an approved local water plan created under RCW 90.92.090, or the water right was subject to an agreement to not divert under RCW 90.92.050 will not be included in the most recent five-year period of continuous beneficial use for the purpose of determining the annual consumptive quantity under this section.  If the water right has not been used during the previous five years but the nonuse of which qualifies for one or more of the statutory good causes or exceptions to relinquishment in RCW 90.14.140 and 90.44.520, *the period of nonuse is not included in the most recent five-year period* of continuous beneficial use for purposes of determining the annual consumptive quantity of water under this section.

(Emphasis added.)

The Department of Ecology argues that the explicit language of RCW 90.03.380(1) requires it to review the "most recent five year period" of water use to determine annual consumptive quantity before approving a water right owner's

application to change or transfer a water right, regardless of any earlier approved application. Loyal Pig astutely responds that Ecology's interpretation of RCW 90.03.380(1) places an irrigator at risk of premature relinquishment or reduction of its water right. Based on Ecology's interpretation, if an irrigator submits an application within five years of having an ACQ previously calculated and a water transfer application approved, the irrigator would need to again explain nonuse or face relinquishment. Loyal Pig contends that the more appropriate interpretation of RCW 90.03.380(1) would allow the water right owner, once Ecology approves a water change application, to seek a further change within the "five year grace period" following the approval of its application and, during this five-year grace period, no subsequent calculation of water use should be required when the user's farming practices have not changed. According to this contention, when Loyal Pig submitted its application for a change in water use in 2017, the 2014 adjudication of the ACQ bound Ecology.

We could exhaust paragraphs outlining principles of statutory construction, but we limit our discussion for now to two principal principles. Our ultimate objective is to ascertain and carry out the legislature's intent. *Gorre v. City of Tacoma*, 184 Wn.2d 30, 37, 357 P.3d 625 (2015). When presented with clear language, we must assume the

13

legislature meant exactly what it said and apply the statute as written. *University of Washington v. City of Seattle*, 188 Wn.2d 823, 832, 399 P.3d 519 (2017).

We agree with the Department of Ecology that RCW 90.03.380(1) shows legislative intent to require a new annual consumptive quantity calculation with every application for a change in the water right certificate. The statute demands a review of the last five years of water consumption. The statute admits no exception when the applicant applied for a change in the water right during the last five years.

Loyal Pig requests that we adopt the analysis of RCW 90.03.380(1) performed in legal opinions requested by water conservancy boards. Loyal Pig also asks us to embrace the rationale behind *In Re Bugni*, a discrete decision entered by the Yakima County Superior Court in the extensive Yakima River watershed adjudication of *Department of Ecology v. Acquavella*, No.77-2-01484-5 (Wash. Super. Ct. Oct. 12, 1977). Sidney P. Ottem, *The General Adjudication of the Yakima River: Tributaries for the Twenty-First Century and a Changing Climate*, 23 J. Envtl. & Litig. 275 (2008). We decline these requests because of the explicit language of RCW 90.03.380(1).

Loyal Pig fears the Department of Ecology's interpretation of RCW 90.03.380 exposes growers to a partial relinquishment of a water right. Loyal Pig relatedly argues that Ecology's interpretation of RCW 90.03.380 conflicts with the spirit behind RCW

90.14.140, which shuns penalizing a water user for nonuse of water for sufficient reasons.
To understand the fear, we provide some background to Washington water law.

Washington's water law, promulgated throughout the state's history by statute and
case law, follows the western American doctrine of water rights by appropriation rather
than the eastern rule of riparian water rights. RCW 90.03.010; *Cornelius v. Department
of Ecology*, 182 Wn.2d 574, 586, 344 P.3d 199 (2015). Under the appropriation system,
the water right holder must put the water claimed under the right to beneficial use or it
relinquishes the right. RCW 90.14.160; *Department of Ecology v. Theodoratus*, 135
Wn.2d 582, 595, 957 P.2d 1241 (1998). Washington law demands that a water right
return to the state, under relinquishment statutes, to the extent that, without cause, the
water right holder voluntarily fails to beneficially use all or any portion of the water right
for a period of five successive years. RCW 90.14.130-.180; *Department of Ecology v.
Acquavella*, 131 Wn.2d 746, 758, 935 P.2d 595 (1997).

As well as being critical to establishing the existence of a water right, beneficial
use establishes the quantity of that right. *Crown West Realty, LLC v. Pollution Control
Hearings Board*, 7 Wn. App. 2d 710, 733, 435 P.3d 288 (2019), *review denied*, 193
Wn.2d 1030, 447 P.3d 165 (2019). A user acquires the right only to the quantity of water
actually put to use with reasonable diligence. *Cornelius v. Department of Ecology*, 182

Wn.2d at 586 (2015). If a water right holder fails to beneficially use any or all of its right for five successive years, the right holder loses all or a portion of the right unless it shows its nonuse falls under one of the narrow categories in RCW 90.14.140. *Department of Ecology v. Acquavella*, 131 Wn.2d at 758; *Cornelius v. Department of Ecology*, 182 Wn.2d at 617.

RCW 90.14.160 declares:

> Any person entitled to divert or withdraw waters of the state through any appropriation authorized by enactments of the legislature . . . who abandons the same, or who voluntarily fails, *without sufficient cause*, to beneficially use all or any part of said right to divert or withdraw *for any period of five successive years* after July 1, 1967, shall relinquish such right or portion thereof, and said right or portion thereof shall revert to the state.

(Emphasis added.) In turn, RCW 90.14.140(1) defines "sufficient cause" in part as drought, service in the armed forces, operation of legal proceedings, federal law restricting water use, temporary reductions of need due to weather conditions, and temporary reduction of use due to a crop rotation.

Loyal Pig sought changes in application of its water right in both 2014 and 2017. Although a water right certificate limits use of the right to a particular source and diversion location and to a discrete area of land, the water right holder may apply to the Department of Ecology to change the location of diversion or the situs of irrigation.

16

*Crown West Realty, LLC v. Pollution Control Hearings Board*, 7 Wn. App. 2d at 720.

RCW 90.03.380(1) authorizes this change or transfer. When a water right holder applies

to amend its certificates or to change the manner or place of use of the water, Ecology

must conduct a tentative determination of the extent and validity of the applicant's water

right pursuant to RCW 90.44.100. *Crown West Realty, LLC v. Pollution Control

Hearings Board*, 7 Wn. App. 2d at 720. RCW 90.03.380 impliedly grants Ecology the

right to limit the extent of the change to the current annual consumptive quantity, which

could be lower than the initial water right.

The Department of Ecology and Loyal Pig disagree as to whether Ecology's

interpretation of RCW 90.03.380 could reduce the water right holder's water right.

We agree with Loyal Pig and share its concern about an unfair law. When Loyal Pig

applied for the change in 2014, the Department of Ecology measured its annual

consumptive quantity and thereafter limited its water right to that quantity. If Ecology

measures the ACQ again in 2017, the calculation could arrive at a smaller sum than the

2014 calculation. Use of a new ACQ could further reduce Loyal Pig's water right.

Agriculture in major sections of eastern Washington, particularly the Columbia

River basin, lacks the rainfall to raise crops, and the region survives and thrives on

irrigation water. Profitable production of most crops east of the Cascade Mountains

demands irrigation. Alternating crops grown on the same land helps to preserve the land, but different crops require different sums of irrigation. Frequent changes in transfer diversion points and application sites, even within a five-year window of time, accommodate an efficient use of irrigation water from crop to crop and site to site. Under RCW 90.03.380(1), these frequent changes could penalize irrigators by reducing a water right. The current law also promotes excessive use of irrigation water in order to save water rights. We would welcome a change in the law.

We observe that some statutes mitigate Loyal Pig's and our concern. For example, the legislature has afforded at least two situations in which the Department of Ecology may ignore the most recent five-year period when a water right holder applies for a change. RCW 90.03.615 reads:

> For purposes of calculating annual consumptive quantity as defined under RCW 90.03.380(1), if, within the most recent five-year period, *the water right has been in the trust water rights program under chapter 90.38 or 90.42 RCW*, or *the nonuse of the water right has been excused from relinquishment under RCW 90.14.140*, the department shall look to the most recent five-year period of continuous beneficial use preceding the date where the excuse for nonuse under RCW 90.14.140 was established and remained in effect.

(Emphasis added.) We already mentioned RCW 90.14.140, which excuses a reduction in use by the water right holder due to drought, temporary reduction in water need, and the rotation of crops, among other reasons. We do not necessarily interpret one statute in

18

isolation, but rather find meaning from related provisions and the statutory scheme as a whole. *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009). The language of RCW 90.03.615 bolsters our interpretation of RCW 90.03.380(1) in that the former statute also shows an intent to always measure the annual consumptive quantity based on the most recent five years unless limited exceptions apply.

Because of some of the arguments asserted by Loyal Pig, the Department of Ecology addresses in its briefing whether the doctrines of collateral estoppel or res judicata prevent Ecology from asserting its view of RCW 90.03.380 in this appeal. In its brief, Loyal Pig agrees that it does not advocate application of res judicata or collateral estoppel in their traditional formats. Therefore, we do not address the application of the two doctrines.

Loyal Pig does not directly assert that the Department of Ecology breached its POL 1120 by requiring a new annual consumptive quantity with Loyal Pig's 2017 change application. It subsumes any argument based on the policy with its request to bar Ecology from rulemaking. Therefore, we do the same.

Rulemaking

The Department of Ecology also asks that we reverse the superior court's entry of an order enjoining Ecology's implementation of its interpretation of RCW 90.03.380(1).

The superior court deemed Ecology's requirement of a new calculation for an annual

consumptive quantity within a five-year window to constitute an adoption of a rule, such

that Ecology needed to comply with rulemaking procedures.  Ecology argues that an

interpretation of an unambiguous statute by an administrative agency does not qualify as a

rule.  Loyal Pig responds that Ecology had previously afforded a five-year grace period

with a second application for a change in water right and a change in this practice

requires Ecology to undergo rulemaking procedures.  Loyal Pig characterizes Ecology's

action as a shift in policy that requires rulemaking.

Chapter 34.05 RCW, the Administrative Procedure Act, controls this question.

RCW 34.05.010, the act's definitions section, defines "rule" as:

> (16) "Rule" means any agency order, directive, or regulation of
> general applicability (a) the violation of which subjects a person to a penalty
> or administrative sanction; (b) which establishes, alters, or revokes any
> procedure, practice, or requirement relating to agency hearings; (c) *which
> establishes, alters, or revokes any qualification or requirement relating to
> the enjoyment of benefits or privileges conferred by law. . . .*   The term
> includes the amendment or repeal of a prior rule, but does not include (i)
> statements concerning only the internal management of an agency and not
> affecting private rights or procedures available to the public.

(Emphasis added.)  Loyal Pig argues that the Department of Ecology's new interpretation

of RCW 90.03.380(1) and its abandonment of an earlier practice under one of its policy

20

statements established a new qualification or requirement relating to the ability to transfer water rights, a benefit or privilege conferred by law.

If any agency action meets the definition of a rule, it must follow rulemaking procedures. *Failor's Pharmacy v. Department of Social & Health Services*, 125 Wn.2d 488, 493, 886 P.2d 147 (1994). RCW 34.05.570(2)(c) invalidates any rule adopted without the process.

Our previous analysis and conclusion that RCW 90.03.380(1) demands a new calculation of the annual consumptive quantity on a second application for a water right change controls our response to Loyal Pig's contention that the Department of Ecology engaged in rulemaking. Assuming any shift in Ecology's policy or interpretation of the statute, the law demanded that shift because of the unambiguous nature of the statute. Just as this court must enforce a statute adopted by the legislature even against the court's wishes, an administrative agency must also enforce a statute.

An agency charged with the administration and enforcement of a statute may interpret ambiguities within the statutory language through the rulemaking process. *Edelman v. State ex rel. Public Disclosure Commission*, 152 Wn.2d 584, 590, 99 P.3d 386 (2004). But an agency is restricted in its interpretation of a statute and, by its rulemaking authority, may not amend or nullify a statute under the guise of interpretation.

*Green River Community College District No. 10 v. Higher Education Personnel Board*,

95 Wn.2d 108, 112, 622 P.2d 826 (1980), *adhered to on recons.*, 95 Wn.2d 962, 633

P.2d 1324 (1981).

An administrative agency's practice does not qualify as a rule, for purposes of the

Administrative Procedure Act, when the practice does not create a new standard, formula,

or requirement, but simply applies and interprets a statute. *Budget Rent A Car Corp. v.*

*Department of Licensing*, 144 Wn.2d 889, 896, 31 P.3d 1174 (2001). An agency does

not engage in rulemaking when following an explicit statute. *Department of Ecology v.*

*Campbell & Gwinn, LLC*, 146 Wn.2d 1, 19, 43 P.3d 4 (2002). If the language of a

provision of a statute which an agency is empowered to administer and enforce leaves no

room for substantial debate over its meaning, an administrative rule reiterating the

inevitable statutory consequence would not by definition constitute either a statutory

interpretation or a statutory implementation that must be expressed by a rule promulgated

pursuant to the Administrative Procedure Act. *Equitable Life Mortgage & Realty*

*Investors v. New Jersey Division of Taxation*, 151 N.J. Super. 232, 376 A.2d 966, 971

(N.J. Super. Ct. App. Div. 1977). Even if an agency announces a new statutory

interpretation, the agency may do so through adjudication, and may give retroactive effect

to the interpretation in the case in which the new interpretation is announced without

rulemaking, because the agency is not really effecting a change in the law. *Andrews v.*

*District of Columbia Police & Firefighters Retirement & Relief Board*, 991 A.2d 763,

771 (D.C. 2010).

When an administrative agency adopts regulations that possess the force of law,

the Administrative Procedure Act and fairness demand that the agency engage in a

process that entails notice to the public and hearings so that the agency will hear and

consider public input. Otherwise, administrative agencies will act as unelected

legislatures. But when an administrative agency merely enforces a statute adopted by

the legislature, the agency does not act in the nature of an unelected legislative body.

The agency merely implements the will of the elected legislature.

We deem *Department of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1

(2002) controlling. Campbell & Gwinn, a subdivision developer, challenged Ecology's

interpretation of a statute that afforded an exemption from a groundwater permit for a

well withdrawing less than 5,000 gallons per day. Campbell & Gwinn argued that

Ecology changed its interpretation of the controlling statute and thereby altered

qualifications for the enjoyment of a benefit. Therefore, according to Campbell & Gwinn,

Ecology needed to engage in a rulemaking procedure. The developer also complained

that an employee of Ecology earlier informed it that it did not need a groundwater permit

23

when it proposed to use multiple wells collectively withdrawing over 5,000 gallons per day to serve a subdivision. The Supreme Court denied Campbell & Gwinn relief from Ecology's application of its interpretation of the statute. Because Ecology merely interpreted a clear statute, it did not engage in rulemaking.

Loyal Pig contends that the Department of Ecology's action mirrors the Department of Ecology's action in *Hillis v. Department of Ecology*, 131 Wn.2d 373, 932 P.2d 139 (1997). In *Hillis*, the Supreme Court ruled that Ecology policies and procedures adopted in response to cuts in the funding of a permitting program were subject to the rulemaking process of the Administrative Procedure Act. Ecology adopted one policy that granted priority in processing water applications to emergencies involving public health, changes of existing rights, and short-term public projects. Ecology also adopted policies regarding the use of the watershed assessment process for the purpose of making decisions on applications for water rights, and for the ranking of watersheds for assessment. Ecology acknowledged its decisions had "general applicability" to all pending water right applicants. The right to apply and be considered under the statutory criteria for a groundwater withdrawal permit was a "benefit or privilege" conferred by statute. *Hillis* contains many similarities to Loyal Pig's challenge to Ecology's action

24

except that, in *Hillis*, Ecology did not administer the explicit provisions of a statute. Neither did Ecology change its interpretation of a statute.

The Department of Ecology also asks that we reverse the superior court's refusal to strike portions of the declarations of Darryll Olsen and Timothy Reierson. Because of our decision in favor of Ecology, we decline to address this assignment of error.

CONCLUSION

We hold that Loyal Pig must again calculate its annual consumptive quantity in order for the Department of Ecology to process its 2017 application for a change in the water right. We, therefore, reverse the superior court. We also revoke the injunction against Ecology from enforcing its interpretation of RCW 90.03.380(1). We reinstate the ruling of the Pollution Control Hearings Board.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, A.C.J.

_____
Lawrence-Berrey, J.

25